## STATE v. RONALD C. PURDY.

153 N. W. (2d) 254.

September 22, 1967—No. 40,383.

134

*C. Paul Jones,* State Public Defender, and *Ronald L. Haskvitz,* Assistant State Public Defender, for appellant.

*Douglas M. Head,* Attorney General, *Gerard W. Snell,* Solicitor General, *William B. Randall,* County Attorney, and *Phyllis Jones* and *Mentor C. Addicks, Jr.,* Assistant County Attorneys, for respondent.

NELSON, JUSTICE.

Appeal from a judgment of conviction of possession of a narcotic drug in violation of Minn. St. 618.02. The following facts in this case are not contested, and the only issues concern the legal conclusions to be drawn from them.

Late in the evening of August 14 or in the early morning of August 15, 1965, the Oakdale Drug Company in Owatonna, Minnesota, was burglarized and a quantity of narcotics, guns, appliances, and other personal property was taken therefrom. Defendant was known to have been in the vicinity at the time of the burglary, as he was apprehended by a Minnesota highway patrolman near Owatonna soon after midnight on August 15, 1965, and given a ticket for a traffic offense.

On the afternoon of August 17, 1965, about 3:55 p. m. Detective Eugene W. Wilson, Chief of Morals and Narcotics, Minneapolis Police Department, received information relative to the burglary of the Oakdale Drug Company from an informer who had given information about criminal offenses on previous occasions and whose information had always proven to be accurate and reliable. The name of the informant was not disclosed at the trial because, so the state contends, this informer would be of no further value to law enforcement authorities and to the public if his identity were known, and his personal safety and life would be endangered.

Detective Wilson learned from this informer that defendant, driving a 1957 blue and white Chevrolet convertible with a continental kit, accompanied by three other persons and carrying in the trunk of the car narcotics and guns which had been stolen in the Oakdale Drug Store burglary, would shortly drive to Apache Plaza in St. Anthony Village, Ramsey County, to meet Sam Vilella to sell to Vilella the narcotics and guns. The informer said Vilella would be driving a 1965 Buick and would be alone.

Upon receiving the foregoing information Detective Wilson informed

the Ramsey County sheriff of the anticipated meeting between defendant and Vilella, and Deputy Sheriff LeRoy Humphrey was dispatched to meet Detective Wilson in the parking lot of Apache Plaza, where the meeting between defendant and Vilella was to occur. Before leaving Minneapolis police headquarters, Detective Wilson examined memoranda concerning the Oakdale Drug Store robbery and the presense of defendant in the Owatonna area at about the time of the burglary. Also, before leaving for Apache Plaza, Detective Wilson conversed with Officer William McFee of the Narcotics Division, Minneapolis Police Department, and learned that McFee had also received information from a reliable source about the planned meeting between defendant and Vilella at Apache Plaza, and that McFee was also on his way there. Upon arrival at the meeting place, Detective Wilson walked to the car of Deputy Sheriff Humphrey and advised Humphrey of the Owatonna burglary and of the information given him by the informer. It appears that Detective Wilson merely confirmed what Humphrey already knew. Wilson got into Humphrey's car and observed two cars answering the description of those belonging to defendant and Vilella parked in an isolated area. Deputy Sheriff Humphrey drove his car toward the two parked cars, and as they approached, Detective Wilson recognized defendant leaning against the fender of his car and talking with Vilella, who was standing beside his own car.

Detective Wilson knew the 1957 Chevrolet belonged to defendant, as he had stopped defendant on or about August 11, 1965, after defendant had driven through a red light in Minneapolis. Wilson further knew from past investigations that defendant had been convicted of a felony. He was also familiar with Vilella.

When Deputy Sheriff Humphrey drove his car toward the area in which defendant and Vilella were parked, defendant and Vilella ran to their respective cars, entered them, and Vilella started to drive away. Humphrey drove his car in front of defendant's Chevrolet and Vilella's Buick, thereby preventing defendant and Vilella from escaping. Deputy Sheriff Humphrey and Detective Wilson then left the patrol car with drawn guns, announcing that they were police officers, and Humphrey placed defendant and the three occupants of his car under arrest. De-

tective Wilson arrested Vilella and advised defendant that he was being held for possession of narcotics.

Deputy Sheriff Humphrey searched defendant and found a loaded .357 magnum Smith & Wesson gun inside defendant's belt under his suit coat. The other men were searched and reinforcements summoned. Wilson and Humphrey searched defendant's automobile, the top of which was down, and saw a bag lying on the floor in front of the back seat of the car. Wilson opened the bag and found that it contained a number of bottles labeled as narcotics, including morphine and demerol. Defendant told Detective Wilson, "You might as well shoot me in the back of the head because I'm facing a twenty-year rap for possession of narcotics." Defendant then tried to run away, but, after a struggle, he was subdued and handcuffed by Detective Wilson and Deputy Sheriff Humphrey.

The search of defendant's automobile was continued and Wilson tried to enter the trunk of defendant's car but could not find the key. Wilson informed defendant that a search of the entire car was going to be made and, if the key to the trunk could not be found, he would break into the trunk. Defendant then told Wilson, "You might as well have the key" and opened his lips and projected the key which he had held between his teeth. The trunk of the convertible was opened and was found to contain a number of guns and other articles, including a round, brown, zippered carrying case. Defendant then asked Detective Wilson, "Are you with narcotics?" to which Wilson answered he was, and defendant stated, "What you want then is in that round brown box." Wilson then opened the brown carrying case and found that it contained a great many bottles and vials labeled as narcotics. Deputy Sheriff Humphrey also examined the carrying case and its contents. The contents of the bottles and vials were later proved at the trial to be narcotics.

The 1957 Chevrolet convertible, license number 7DE-661, was proved at the trial to belong to defendant; and the 1965 Buick, license number 5DM-380, was proved at the trial to belong to Sam Vilella. Under the supervision of Deputy Sheriff Humphrey, defendant's Chevrolet was towed to the Ramsey County sheriff's patrol station where it was locked in the garage. The keys to the convertible and to the garage

were given into the custody of Lieutenant Fred Spencer, deputy sheriff in charge of the patrol station. Deputy Sheriff Ronald L. Nadeau then took control of the person of defendant and removed him for incarceration in the Ramsey County jail. As Nadeau and defendant were leaving the parking lot in a squad car, defendant offered Nadeau $100 if he would tell him the name of the person who "squealed" on him. Defendant also told Nadeau that he would have killed Deputy Sheriff Humphrey if the persons with defendant had had guns to back up his play.

On November 8, 1965, defendant moved for the return of certain property alleged to have been illegally seized, and to suppress the use of such property as evidence, and for a bill of particulars. After a hearing the court, the Honorable Leonard Keyes, denied defendant's motion for suppression of evidence with respect to the evidence discovered in the search incident to defendant's arrest at Apache Plaza; and ordered suppressed the evidence seized in an additional search of the automobile at the patrol station. The court further ordered that none of the narcotics, guns, or personal property be returned to defendant, and that the state inform the defendant of the narcotics which it seized in the search incidental to the arrest. Judge Keyes found that:

"On August 17, 1965 at about 3:55 P. M. Detective Eugene W. Wilson, Chief of Morals and Narcotics, Minneapolis Police Department, received information from a reliable informer known by him to have given information about criminal offenses on previous occasions, which information had proven to be accurate and reliable.

"The informer would be of no further value to law enforcement authorities, and therefore to the public, if the informer's identity were known and the informer's personal safety and life would be endangered if his identity were revealed."

The court's conclusions of law were, in part, as follows:

"The arrest of Ronald Purdy was lawful in that the officers had reasonable cause to believe that Purdy had committed a felony in the burglary of the Owatonna Drug Store. M.S.A. Section 629.34(3); and in that the officers had reasonable cause to believe that Purdy was com-

mitting the felony of illegal possession of narcotics. M.S.A. Section 629.34(4). State v. Olson, [271] Minn. [50], 135 N. W. 2d 181.

"The search of Ronald Purdy and of his automobile, the 1957 Chevrolet convertible, was incident to a lawful arrest; therefore, the evidence seized in the course of the search will be received. United States v. Rabinowitz, 339 U. S. 56."

The case came up for trial on December 9, 1965. Defendant waived jury trial. The trial judge, the Honorable Edward D. Mulally, adopted the findings of Judge Keyes, quoted above, and ruled:

"* * * [T]he evidence of a narcotic drug in the possession of the defendant is admissible. Thus, the Court has ruled that the evidence was lawfully seized pursuant to a lawful search incident to a lawful arrest. * * *

"Here, in the opinion of this Court, the situation as to time and nature of activity did not lend itself to the request for an issuance of a warrant, although the facts would have supported the issuance of a warrant had the time available and the nature of the activity made such a request practicable.

"Although here the arrest was without a warrant, the arrest was based upon probable cause; it was lawful, and the search and seizure incident thereto was lawful, including any statements made at the time by the defendant."

Defendant was found guilty by the court of the charge of possession of narcotics pursuant to Minn. St. 618.02 and, upon conviction, was sentenced to the custody of the commissioner of corrections for imprisonment according to law on December 13, 1965.

The relief sought by defendant is a reversal of the trial court's orders denying his motion to suppress and his motion to dismiss at the close of the state's case; or in the alternative an order granting a new trial on the grounds that he was denied certain fundamental rights guaranteed by the United States Constitution. He contends that the search and seizure as conducted was in violation of his rights guaranteed by the Fourth Amendment of the United States Constitution and that the court erred in admitting the fruits of that search into evidence. Defendant

further contends that the trial court erred in refusing to require the state to name the informer giving the information which constituted probable cause for defendant's arrest, and that the trial court further erred in admitting hearsay statements of the informer. The state, of course, denies these contentions.

■ It is well established in this state that, when a person is lawfully arrested without a warrant, evidence found and seized from his person or from his control at the time of such arrest is admissible if indicative of his guilt of the crime for which he has been placed under arrest. See, State v. Clark, 270 Minn. 538, 134 N. W. (2d) 857; State v. Demry, 260 Minn. 173, 109 N. W. (2d) 587, and cases and authorities cited therein. Thus, we must first determine the lawfulness of defendant's arrest before deciding the issue of admissibility of the evidence seized at the time of the arrest.

■ Minn. St. 629.34 provides in part:

"A peace officer may, without warrant, arrest a person:

\*   \*   \*   \*   \*

"(3) When a felony has in fact been committed, and he has reasonable cause for believing the person arrested to have committed it; or

"(4) Upon a charge made upon reasonable cause of the commission of a felony by the person arrested."

We have said that reasonable cause under the statutes and "probable cause" required by the Fourth Amendment to the United States Constitution are synonymous. State v. Sorenson, 270 Minn. 186, 134 N. W. (2d) 115. Thus, Federal and Minnesota decisions, as well as cases from other states reviewed by the United States Supreme Court, must be considered in analyzing reasonable cause in the context of the facts of the instant case. It is well settled, both under Federal law and in Minnesota:

"\*  \*  \* If the arrest was effected on the basis of advice furnished by a trustworthy informant, it was sufficient to constitute probable cause for the arrest and to render admissible observations made incident to it." State v. Emerson, 266 Minn. 217, 220, 123 N. W. (2d) 382, 384, citing Draper v. United States, 358 U. S. 307, 79 S. Ct. 329, 3 L. ed. (2d) 327.

The test for reliability or trustworthiness of an informer is well stated in Jones v. United States (9 Cir.) 326 F. (2d) 124, 128, where the court said:

"* * * If 'X' *once* tells police officer 'Y' that he has cause to believe some certain illegal act will take place, or some certain fact exists, and 'Y' subsequently finds out such statement of 'X' is true, *thereafter* 'Y' has *some* reason to trust and rely on the accuracy of informant 'X'. The more times that such a sequence of events takes place, the greater the reliability. But this reliability is in the mind of 'Y' (the police officer), not 'X.' Cross-examination of 'X' to prove his own reliability would not be legally fruitful.

"The second way that an informer's reliability can be confirmed is the actual appearance, at the time and place specified in such information, of the person, auto, drug or whatever it is that was predicted. This in itself adds authenticity to the original story. As Draper, supra, points out—the appearance of the man 'who habitually walked fast,' getting off a certain train carrying a certain 'tan zipper bag' in a certain railroad station, confirms the informer's reliability.

"Here the informer, known to be accurate and reliable, described in advance that two persons of certain description would, in an automobile of a certain model and painted in a certain way, pass over the Mexican-American border on a certain day (or night), and the auto would contain narcotics. When this event took place, it added to the previous reliability of the informant, and gave the government officers reason to stop appellant.

*   *   *   *   *

"Thus, the officer had ample probable cause and reasonable grounds to believe that appellant was violating the laws relating to narcotic drugs at the time of search. Finding the bulk marihuana, the arrest was lawful, as was the individual subsequent search and seizure."

It would appear that both methods of confirmation of reliability described in the Jones case were present in the case at bar. The informer had on numerous prior occasions given information which proved re-

liable and trustworthy to Detective Wilson. The informer gave to Detective Wilson the names of the persons who would be present, the year and make of the cars that they would be driving, and the place where the sale of goods by defendant to Vilella would occur. This information was confirmed both by Wilson and Deputy Sheriff Humphrey before defendant was arrested. The fact is that Detective Wilson personally knew both defendant and Vilella and recognized them at the meeting place. Wilson also knew that a burglary had occurred at the Oakdale Drug Company in Owatonna on August 15, and he knew from a police communication that defendant received a traffic ticket in Owatonna at about the time of the burglary.[1] The informer also made known to Wilson that narcotics, guns, and other personal property taken from the drug company would be in the trunk of defendant's car, and all of these items were found therein. When all of this information is considered together, it becomes clear that Detective Wilson had ample cause to believe that defendant was violating § 618.02.

In addition, Detective Wilson informed Ramsey County Deputy Sheriff Humphrey of these facts before the arrest occurred. He thereby confirmed what Deputy Humphrey already knew, so that both Wilson and Humphrey had probable cause to believe defendant was committing a crime. Therefore, the arrest of defendant without a warrant was lawful (based upon probable cause) as was the contemporaneous search and seizure. The evidence then seized from defendant's person or control was properly admitted at the trial.

■ The state further contends that, apart from the question of the legality of the arrest, the facts of this case show defendant consented to the search, thereby waiving any right to object later that the search was unreasonable. We agree.

In State v. Harris, 265 Minn. 260, 269, 121 N. W. (2d) 327, 334, certiorari denied, 375 U. S. 867, 84 S. Ct. 141, 11 L. ed. (2d) 94, as in the instant case, defendant claimed that when he gave his consent he was merely submitting to the color of police authority, and this court held:

---

[1] See, Minn. St. 629.34, subd. 3.

"* * * Failure to object to a search is evidence of consent * * * and consent itself constitutes a waiver of defendant's right to object later that the search was unreasonable. * * *

"The burden of proving lack of consent, i.e., unlawful search and seizure, is upon the defendant * * * since the officers are presumed to have acted properly."

See, also, State ex rel. Branchaud v. Hedman, 269 Minn. 375, 130 N.W. (2d) 628, certiorari dismissed, 381 U. S. 907, 85 S. Ct. 1456, 14 L. ed. (2d) 289.

At the time of defendant's arrest, the law enforcement officers had merely to look into the open convertible to see a bag of narcotics protruding from beneath the seat. Since the officers had information that narcotics were to be found in the trunk of defendant's car they did tell defendant they were going to force open the trunk at the scene of arrest. Following this statement, defendant gave them the keys, saying, "You might as well have the key." He at no time objected to the search and this is evidence of his consent. Indeed, after the trunk had been opened, defendant even told the officers that what they wanted was "in the round brown box" which contained bottles and vials of narcotics.

Since defendant consented to the search and seizure, it is clear that he waived any right to object to its legality at a later time. Thus, whether or not the arrest was legal, which the record clearly indicates it was, the evidence thus obtained was properly received at the trial.

■ Defendant contends that the trial court erred in refusing to require the state to name the informer who had given the information constituting probable cause for defendant's arrest. He argues that, absent the information obtained from the informer, there was no probable cause to arrest him, and that, absent such probable cause to arrest, there could be no legal basis for the search and seizure because the search can be sustained only if the arrest was lawful.

Defendant cites Roviaro v. United States, 353 U. S. 53, 77 S. Ct. 623, 1 L. ed. (2d) 639. The court held in that case that where the disclosure is relevant and helpful to the defense of an accused, or is essential to a fair trial, the government's privilege to withhold disclosure of the in-

former's identity must give way. In the recent case of McCray v. Illinois, 386 U. S. 300, 309, 87 S. Ct. 1056, 1062, 18 L. ed. (2d) 62, 70, the court in discussing the Roviaro case said:

"* * * The petitioner there had been brought to trial upon a two-count federal indictment charging sale and transportation of narcotics. According to the prosecution's evidence, the informer had been an active participant in the crime. He 'had taken a material part in bringing about the possession of certain drugs by the accused, had been present with the accused at the occurrence of the alleged crime, and might be a material witness as to whether the accused knowingly transported the drugs as charged.' * * * The trial court nonetheless denied a defense motion to compel the prosecution to disclose the informer's identity.

"This Court held that where, in an actual trial of a federal criminal case, 'the disclosure of an informer's identity * * * is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way. In these situations the trial court may require disclosure and, if the Government withholds the information, dismiss the action.' "

However, in Roviaro the court also said (353 U. S. 62, 77 S. Ct. 628, 1 L. ed. [2d] 646):

"We believe that no fixed rule with respect to disclosure is justifiable. The problem is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense. Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors."

The court in McCray explained (386 U. S. 311, 87 S. Ct. 1062, 18 L. ed. [2d] 70):

"What Roviaro thus makes clear is that this Court was unwilling to impose any absolute rule requiring disclosure of an informer's identity even in formulating evidentiary rules for federal criminal trials. Much less has the Court ever approached the formulation of a federal eviden-

tiary rule of compulsory disclosure where the issue is the preliminary one of probable cause, and guilt or innocence is not at stake. Indeed, we have repeatedly made clear that federal officers need *not* disclose an informer's identity in applying for an arrest or search warrant. As was said in United States v. Ventresca, 380 U. S. 102, 108, [85 S. Ct. 741, 745, 13 L. ed. (2d) 684] we have 'recognized that "an affidavit may be based on hearsay information and need not reflect the direct personal observations of the affiant," so long as the magistrate is "informed of some of the underlying circumstances" supporting the affiant's conclusions and his belief that any informant involved *"whose identity need not be disclosed * * * was 'credible' or his information 'reliable.' "* Aguilar v. Texas [378 U. S. 108, 114, 84 S. Ct. 1509, 1514, 12 L. ed. (2d) 723].' * * * See also Jones v. United States, 362 U. S. 257, 271-272 [80 S. Ct. 725, 736-737, 4 L. ed. (2d) 697]; Rugendorf v. United States, 376 U. S. 528, 533 [84 S. Ct. 825, 828, 11 L. ed. (2d) 887]. And just this Term we have taken occasion to point out that a rule virtually prohibiting the use of informers would 'severely hamper the Government' in enforcement of the narcotics laws. Lewis v. United States, 385 U. S. 206, 210 [87 S. Ct. 424, 427, 17 L. ed. (2d) 312]."

It appears to have become well settled that when a trustworthy informant is a mere transmitter of information and not a competent witness to the crime itself, and the name of the informant is not essential to the defense, the informant's name need not be disclosed when the information was used as a basis for probable cause to search or arrest. Bruner v. United States (5 Cir.) 293 F. (2d) 621, certiorari denied, 368 U. S. 947, 82 S. Ct. 388, 7 L. ed. (2d) 343; Jones v. United States (9 Cir.) 326 F. (2d) 124, certiorari denied, 377 U. S. 956, 84 S. Ct. 1634, 12 L. ed. (2d) 499; People v. Coffey, 12 N. Y. (2d) 443, 240 N. Y. S. (2d) 721, 191 N. E. (2d) 263, certiorari denied, 376 U. S. 916, 84 S. Ct. 671, 11 L. ed. (2d) 612; People v. Durr, 28 Ill. (2d) 308, 192 N. E. (2d) 379, and cases cited therein, certiorari denied, 376 U. S. 973, 84 S. Ct. 1138, 12 L. ed. (2d) 87; State v. Biloche, 66 Wash. (2d) 325, 402 P. (2d) 491, certiorari denied, 383 U. S. 949, 86 S. Ct. 1207, 16 L. ed. (2d) 211. See, also, People v. Malinsky, 15 N. Y. (2d)

86, 255 N. Y. S. (2d) 850, 204 N. E. (2d) 188. It should be noted that the facts in the above-cited cases are nearly identical to those of the instant case.

The Illinois Supreme Court in People v. Durr, *supra,* in considering the question whether the identity of an informer should be revealed, quoted from People v. Mack, 12 Ill. (2d) 151, 165, 145 N. E. (2d) 609, 615, saying (28 Ill. [2d] 313, 192 N. E. [2d] 381):

"* * * '[T]he record is barren of any showing or inference that he [the informer] either participated in the crime of the defendant or helped set up its commission,' * * *: 'In short, it is our opinion that, regardless of what the informer's testimony might have been, it would have little relevancy in face of the independent evidence by which the crime * * * was proved. Under such a circumstance, together with the facts which show that the informer neither participated in the crime nor was present at the time of the raid or arrest, amplification or contradiction of the information which caused the defendant to be placed under surveillance and caught in the commission of his crime would be of no assistance to his defense. We therefore see no unfairness to defendant, or any basis for upsetting the public purpose upon which the informer's privilege is said to rest.'

\* \* \* \* \*

"In our consideration of [the question whether the identity of an informant should be revealed] we have been unable to perceive any necessity to hold inherent in the constitutional safeguards protecting those charged with crime the right to information completely irrelevant to the question of innocence, disclosure of which would seriously hamper effective law enforcement, and we are convinced that the better result is the one here adopted. Considering also the deterrent aspects of the civil and criminal remedies for false arrests, it is our opinion that determination of probable cause by reliance upon the officer's testimony as to the reliability of an otherwise anonymous informer is likely to produce evils of far less consequence than those resulting from depriving the public of an important source of information necessary to the suppression of a particularly vicious form of crime [illegal possession of narcotics]."

Clearly, under such circumstances as are present in this case, law enforcement would be hampered if all informants were to be made known. Police cannot personally know all that goes on in the criminal community, but trustworthy informants can add to police knowledge.

The eagerness of the accused to ascertain the identity of the informant clearly appears in the record, based upon the offer made for the name of the person who had informed on him. It is well known that the most formidable single obstacle to the effective use of informers is the underworld code of silence. This was made clear here by the following exchange between the trial court and Detective Wilson:

"The Court: Incidentally, officer, do you feel there would be personal harm to this informer if his identity were released? Would he be in danger or not?

"The Witness: There would be no question in my mind that this person would be in danger."

Under the facts of the instant case the refusal of the court to require that the informer be identified was proper and free from error, and the ruling of the trial court on that issue is upheld.

■ Defendant maintains that the district court erred in admitting the "hearsay" statements of the informer. We do not in this case have a situation where, according to the prosecution's evidence (as in the Roviaro case), the informer had been an active participant in the crime. It appears to be well established that when the informer's statements testified to by a peace officer are not intended to prove the guilt of the accused but merely to demonstrate that the officer believed in the accused's guilt and had probable cause for arrest, testimony as to the statements of the informer is admissible. State v. Schifsky, 243 Minn. 533, 69 N. W. (2d) 89; Draper v. United States, *supra;* People v. Coffey, *supra.*

In the Schifsky case police officers received information over the radio that Schifsky had a gun and was threatening to shoot his wife. At the trial the police officers testified as to the contents of that radio message. The court found that it was clear that the testimony was not introduced to prove the truth of the matter stated but only to prove certain verbal

acts for the purpose of showing that the deputy sheriffs, who were peace officers, had reasonable cause to believe that a felony was in the process of being committed and that therefore they could, as they did, make an arrest of the defendant without a warrant. The court in Schifsky thus concluded that the evidence received was not received as hearsay evidence bearing on the guilt or innocence of the defendant, but as primary and original evidence to show that the deputies had reasonable cause to believe a crime had been or was about to be committed and to arrest without a warrant. This is also true in the instant case, since the informer was not a material witness to the crime but a mere transmitter of information. His information was not introduced at the trial on the issue of guilt but merely to demonstrate that the peace officers had reasonable cause to arrest. See, United States v. Kancso (2 Cir.) 252 F. (2d) 220, 223, where the court pointed out that hearsay evidence derived from an informer is as competent evidence on which to show probable cause as any other proof, stating:

"The exclusion of hearsay evidence was developed to protect the opposing party's right of confrontation and cross-examination upon the trial. There is no reason for imposing such a restriction in connection with the investigation of crime."

See, also, McDaniel v. United States (5 Cir.) 343 F. (2d) 785; Kay v. United States (4 Cir.) 255 F. (2d) 476. The McDaniel and Kay cases also establish that the right of confrontation may not be invoked to exclude evidence otherwise admissible under legitimate exceptions to the hearsay rule.

In McCray v. Illinois, *supra,* decided March 20, 1967, it appears that at a preliminary hearing to determine probable cause for defendant's arrest and the incidental search of his person, an Illinois court sustained objections to defendant's questions as to the identity of an informer, after arresting police officers had described with specificity what the informer actually said and why the officers thought the information was credible. Defendant's motion to suppress as evidence the heroin found in his possession was denied and he was subsequently convicted upon the evidence of the heroin. The judgment of conviction was affirmed by

the Supreme Court of Illinois, 33 Ill. (2d) 66, 210 N. E. (2d) 161. On certiorari the Supreme Court of the United States affirmed, 386 U. S. 300, 87 S. Ct. 1056, 18 L. ed. (2d) 62. In an opinion by Mr. Justice Stewart, expressing the view of five members of the court, it was held that the state court's recognition of the privilege against disclosure of the identity of an informer did not under the circumstances stated above violate the due process clause of the Fourteenth Amendment nor the Sixth Amendment right of confrontation, applicable to the states through the Fourteenth Amendment. The court recognized that under Illinois law, when the issue is not guilt or innocence but that of probable cause for an arrest or search, police officers need not invariably be required to disclose an informant's identity if the trial judge is convinced, by evidence submitted in open court and subject to cross-examination, that the officers did rely in good faith upon credible information supplied by a reliable informant. It was also held that neither the due process clause of the Fourteenth Amendment nor the Sixth Amendment right of confrontation is violated by a state court's recognition, at a preliminary hearing to determine the existence of probable cause for the arrest of a narcotics suspect and the search of his person, of the governmental privilege against disclosure of the identity of an informer, where the arresting officers' sworn testimony fully supports a finding of probable cause. The court also said that nothing in the due process clause of the Fourteenth Amendment requires a state court judge, in every preliminary hearing to determine probable cause for an arrest and search, to assume that the arresting officers are committing perjury; and that to take such a step would be beyond the pale of the proper function of the Supreme Court of the United States in the Federal system, and would be a wholly unjustifiable encroachment by that court upon the constitutional power of the states to promulgate their own rules of evidence in their own state courts.

We conclude, therefore, that the trial judge did not err in admitting into evidence the police officers' statements concerning information given them by an informer, upon which probable cause was based. The facts proving that the defendant violated Minn. St. 618.02, in that he wrongfully and unlawfully possessed narcotic drugs, are clear and uncontested.

His guilt is not denied. Upon the record, we do not think that defendant has shown that his substantive rights were violated or that prejudicial error was committed in the proceedings below. For those reasons the judgment of the lower court must be affirmed.

Affirmed.