# STATE v. JUAN MARTINEZ DeSCHOATZ.

157 N. W. (2d) 517.

March 22, 1968—No. 40,602.

4

*C. Paul Jones,* State Public Defender, and *Ronald J. Wolf,* for appellant.
*Douglas M. Head,* Attorney General, *George M. Scott,* County Attorney, and *David C. Weinberg,* Assistant County Attorney, for respondent.

NELSON, JUSTICE.

Appeal from a judgment of conviction. The case was tried before a jury in the District Court of Hennepin County which found defendant guilty of criminal possession of narcotics in violation of Minn. St. 618.02.

On April 26, 1966, George C. Bendt, supervisor of the Narcotics Division of the Minneapolis Police Department, and several other police officers were issued a warrant to search for narcotics at Apartment 5, 911 East 21st Street, Minneapolis, on the basis of Bendt's supporting affidavit, which stated:

"This affiant is the supervisor of the Minneapolis police dept narcotic squad. For over the past year I have information from two reliable sources that Juan Martinas, known as 'Marty' was selling marihuana out of his house at 609 19th Ave. S. Both of these informants, saw marihuana on the premises. These informants have seen the marihuana more than once. Approx a month ago Martinas moved to 911 E. 21st St apt 5. During the past month a reliable informant has told me that there was marihuana in the apt of Martinas. As recently as the past week this informant has seen the marihuana at these premises of 911 E. 21st St apt 5. This informant has been reliable in the past and has given information that I know to be true and information that has resulted in arrests and convictions. I believe this informant to be reliable at this time."

Pursuant to that warrant the apartment was searched, items containing traces of marijuana were seized, and sometime later that day defendant was arrested outside that apartment and charged with the criminal possession of that marijuana.

Defendant requested a preliminary hearing, after which he was bound over to district court for trial.

A Rasmussen hearing was held (pursuant to State ex rel. Rasmussen v. Tahash, 272 Minn. 539, 141 N. W. [2d] 3) wherein defendant moved for disclosure of the identity of the informant or informants whose information

was the basis for the search warrant and to suppress the evidence seized as a result of the search of defendant's apartment.

It appears that at the Rasmussen hearing Officer Bendt testified that although another informant had told him there was marijuana at defendant's former residence that "information was quite old" and that any information upon which Officer Bendt was relying to obtain the warrant to search the apartment to which defendant had recently moved came from one informant. Defendant claims that either one or two other persons in addition to himself shared this particular apartment and that one was there at the time of the search, while defendant was not.

Defense counsel's motions for disclosure of the identity of the informant and suppression of the evidence obtained by the search were denied by the court at the close of that hearing, despite counsel's contentions that in addition to his inability to attack probable cause "the defendant firmly believes that the informant had something to do with the article seized in his apartment being there" and "[t]he defense of this matter would be greatly hampered and harmed by not knowing the name of this informant." The contention that the informant "had something to do with the articles seized" disappeared due to certain admissions made by defendant later at the trial.

At the trial Officer Bendt testified as follows:

"A     Approximately a year ago a reliable informant who told me reliable things in the past before this, told me that a man by the name of Marty was selling marijuana. And this informant stated he had seen this marijuana on the premises.

"MR. WILLIS [counsel for defendant]: Your Honor, I would object to this testimony. This is hearsay.

"THE COURT: Sustained.

\*     \*     \*     \*     \*

"Q     For what reason were you seeking the defendant at that time?

"A     I had been told that there was narcotics on his premises.

"MR. WILLIS:     Your Honor, I again object to the matter of his testimony. He is narrating hearsay testimony, and such testimony we are not at this time able to cross-examine to determine the reliability of that testimony and that information. And I object.

6

"THE COURT: Sustained. The answer will be stricken.

"Q (Mr. Rapoport) [counsel for the state] Mr. Bendt, if you can relate the investigation procedures with relation to why you were investigating these matters.

"A. After receiving certain information I and other officers went to this residence from the outside and put surveillance on this house. We never saw any action or anybody about it—about the house. Later a party living at the same address as Martinez was indicted by the Grand Jury for selling narcotics to an informant from the same address.

"Q So your relationship with the defendant prior to the 26th of April was in relation to your job as head of the narcotics squad?

"A Yes, it was.

"Q Other than that you had no relationship?

"A No."

At this point counsel for defendant, who was not a court-appointed counsel but one selected by defendant himself, moved for a mistrial on the grounds that the state was introducing evidence supposedly of a prior arrest which had not led to a conviction and, further, that defendant had not put his character in evidence by taking the stand at that point. The court denied the motion and instructed the jury that the conviction of one other than defendant had nothing to do with defendant's guilt or innocence.

Another state witness, Officer Wilbur Jones, and agent for the Federal Bureau of Narcotics, while under cross-examination by the defense testified that he had reports that defendant "was engaged in the traffic of marijuana"; "reports from informants that he was dealing in narcotics"; and "reports that he was selling marijuana and on occasion had heroin for sale." Officer Jones further testified that these informants said that they had purchased marijuana from defendant. He said also that although he knew there was another, he could then think of only one informant, whom he refused to name.

At the close of the state's case defense counsel moved to have the testimony of the officers stricken or, in lieu thereof, that the court order them to identify the informant. This alternative motion was denied by the trial court.

At the conclusion of the trial 3 days later, the following was included in the instructions:

"* * * Any evidence as to which an objection was sustained by the court and any evidence ordered stricken by the court must be entirely disregarded."

Officer Bendt testified at the trial that after defendant's arrest "I advised him he had a right to call his attorney if he wished, and anything he said could be used against him or he did not have to talk to us if he so wished." The officer then testified about certain damaging admissions made by defendant. Charles Overall, a witness for the defense who was present at that time, denied having heard the officer advise defendant of his rights; and defendant himself denied having been advised of any rights other than that anything he said might be used against him.

All of the items of evidence consisting of articles containing marijuana or used in conjunction with marijuana were introduced and identified by Officer Bendt and the other officers who assisted him in the search. Mrs. Dawn Knight, a Minneapolis city chemist, testified that at the request of the Minneapolis Police Department she had examined the articles and that in her opinion the substance found in them was marijuana.

The arresting officers testified that they arrested defendant and another pursuant to an order of Officer Bendt received by radio call and took them to the Narcotics Division Office and turned both over to Officer Bendt. One of the officers corroborated the testimony of Officer Bendt that he had informed defendant of all his constitutional rights and that defendant had made a number of admissions at the time.

Charles Overall, a friend of defendant and the man who was arrested at the same time as defendant, testified generally as to the events regarding the arrest. He stated on cross-examination that he was not present at all times when the police officers were with defendant and that things could have been said that he did not hear. He also admitted that he had gone into the bathroom and had been gone about 5 minutes.

When defendant took the stand he stated that he was never properly advised in regard to his constitutional rights; that he did not make admissions to Officer Bendt when he was brought to the Narcotics Division

Office; and that, while most of the articles introduced in evidence belonged to him, the marijuana found therein did not belong to him and was not in them when he had last seen them.

The following questions arise out of defendant's assignments of error:

(1) Was it error for the trial court to refuse to order the state to disclose the identity of the informant or, in lieu of that, to refuse to suppress the evidence obtained as a result of the information furnished by the informant?

(2) Was it error for the trial court to refuse to grant defendant's motion for a mistrial?

(3) Was it error for the trial court to refuse certain testimony of the officers or in lieu to refuse again to order the state to disclose the identity of the informant?

(4) Was it error for the trial court to permit testimony of defendant's admissions where the requirements of Miranda v. Arizona, 384 U. S. 436, 86 S. Ct. 1602, 16 L. ed. (2d) 694, had not first been established by the state?

■ Defendant's contentions that the state should have been required to disclose the identity of the informant were based upon a claim that the informant might have had something to do with placing the seized items in the apartment. This claim was apparently predicated upon the fact that one or two other persons in addition to defendant shared this particular apartment and that other persons had access to it. The state, however, contends that by defendant's own testimony he was the owner of the apartment and lived there with a girl friend and that no one else lived there with him. There was in fact no substantiation at either the preliminary hearing, the Rasmussen hearing, or at the trial, of defendant's claim that others had access to his apartment.

These unsupported allegations cannot without more be deemed sufficient to require disclosure of the informant's identity, thus negating the value to the state in the future of this source of information and very possibly placing the informant in a position where great physical harm or other undesirable consequences might be visited upon him or his family. Under the circumstances, the trial court committed no error in refusing to order

the state to disclose the identity of the informant or in refusing to suppress the evidence obtained as a result of the search and seizure pursuant to the search warrant.

The recent case of McCray v. Illinois, 386 U. S. 300, 87 S. Ct. 1056, 18 L. ed. (2d) 62, has set forth clearly the applicable law with regard to the disclosure of an informant's identity. In that case, an informant had given information to police that defendant was selling narcotics, had narcotics on his person, and could be found in a certain part of town. The arresting officer testified that he had been acquainted with the informant for approximately a year and during that time the informant had supplied him with information about narcotics activities several times, which information had proved to be accurate and had resulted in numerous arrests and convictions. Objection to a question on cross-examination as to the identity of the informant was sustained by the trial court. There was a conviction for possession of narcotics. The United States Supreme Court upheld the trial court's permitting the officer to withhold the informant's identity.

The Supreme Court in the McCray case stated that the information supplied to the police officers provided the requisite probable cause to sustain the arrest and search in that case, citing Draper v. United States, 358 U. S. 307, 79 S. Ct. 329, 3 L. ed. (2d) 327, and said (386 U. S. 304, 87 S. Ct. 1059, 18 L. ed. [2d] 67):

"* * * [T]he facts and circumstances within their [the officers] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense."

See, Brinegar v. United States, 338 U. S. 160, 69 S. Ct. 1302, 93 L. ed. 1879; Henry v. United States, 361 U. S. 98, 80 S. Ct. 168, 4 L. ed. (2d) 134.

The court in the McCray case also addressed itself to the question of defendant's right of confrontation and cross-examination of the informant. The court pointed out and approved the well-settled Illinois law that *when the issue is not guilt or innocence but rather the question of probable cause for an arrest or a search* police officers are not in-

variably required to disclose an informant's identity if the trial judge is convinced that the officers did in fact rely in good faith upon credible information supplied by a reliable informant. The court then went on to review the law of other states and concluded (386 U. S. 308, 87 S. Ct. 1061, 18 L. ed. [2d] 69):

"What Illinois and her sister States have done is no more than recognize a well-established testimonial privilege, long familiar to the law of evidence."

The court also examined the Federal cases concerning the question of disclosure of an informant's identity, including Roviaro v. United States, 353 U. S. 53, 77 S. Ct. 623, 1 L. ed. (2d) 639. It concluded that Roviaro made clear that (386 U. S. 311, 87 S. Ct. 1062, 18 L. ed. [2d] 70)—

"* * * this Court was unwilling to impose any absolute rule requiring disclosure of an informer's identity even in formulating evidentiary rules for federal criminal trials. Much less has the Court ever approached the formulation of a federal evidentiary rule of compulsory disclosure where the issue is the preliminary one of probable cause, and guilt or innocence is not at stake. Indeed, we have repeatedly made clear that federal officers need *not* disclose an informer's identity in applying for an arrest or search warrant. As was said in United States v. Ventresca, 380 U. S. 102, 108 [85 S. Ct. 741, 745, 13 L. ed. (2d) 684, 688] we have 'recognized that "an affidavit may be based on hearsay information and need not reflect the direct personal observations of the affiant" so long as the magistrate is "informed of some of the underlying circumstances" supporting the affiant's conclusions and his belief that any informant involved *whose identity need not be disclosed* * * * was credible" or his information reliable.'" Aguilar v. Texas, 378 U. S. 108, 84 S. Ct. 1509, 12 L. ed. (2d) 723.

The court in McCray also cited Jones v. United States, 362 U. S. 257, 80 S. Ct. 725, 4 L. ed. (2d) 697, and Rugendorf v. United States, 376 U. S. 528, 84 S. Ct. 825, 11 L. ed. (2d) 887, and noted that just that term the court had taken occasion to point out (386 U. S. 312, 87 S. Ct. 1063, 18 L. ed. [2d] 71):

"* * * [A] rule virtually prohibiting the use of informers 'would

severely hamper the Government' in enforcement of the narcotics law. Lewis v. United States, 385 U. S. 206, 210 [87 S. Ct. 424, 427, 17 L. ed. (2d) 312, 316]."

The court summarized its views (386 U. S. 312, 87 S. Ct. 1063, 18 L. ed. [2d] 71) by saying that in the exercise of its power to formulate evidentiary rules for Federal criminal cases it had consistently declined to hold that "an informer's identity need always be disclosed in a federal criminal trial, *let alone in a preliminary hearing to determine probable cause for an arrest or search.*" (Italics supplied.) The court refused to hold that the Constitution compelled the State of Illinois to abolish the informant's privilege from the law of evidence and to require disclosure of the informant's identity in every preliminary hearing where it appears that the officers had made an arrest or search in reliance upon facts supplied by an informant that they had reason to trust, stating (386 U. S. 313, 87 S. Ct. 1063, 18 L. ed. [2d] 72):

"* * * We find no support for the petitioner's position in either of those constitutional provisions [the due process clause of the Fourteenth Amendment and the Sixth Amendment]."

The holdings of the United States Supreme Court in McCray are controlling in the instant case and determinative of the issue of whether or not an informant's identity must be disclosed at a preliminary hearing to determine probable cause for the issuance of a search warrant or an arrest.

In the recent case of United States v. Tucker (2 Cir.) 380 F. (2d) 206, the issue was whether the government had failed to establish probable cause for arrest and search when the trial court had refused to compel the government to disclose the identity of the informant. The court found in the Tucker case that there was in fact probable cause and affirmed the conviction. The court therein, citing McCray, stated (380 F. [2d] 211):

"There is no absolute constitutional right to disclosure of the identity of an informer at every hearing on a motion to suppress."

The court noted that the United States Supreme Court had recognized the importance of the "informer's privilege," citing United States v.

12

Ventresca, 380 U. S. 102, 108, 85 S. Ct. 741, 745, 13 L. ed. (2d) 684, 688, and said (380 F. [2d] 212):

"Inasmuch as we conclude that we are not bound by any rule requiring disclosure of the informants' identities, we then reach the question whether nondisclosure was justified in light of the particular circumstances of this case."

The court in Tucker concluded that the appellant had not set forth any particular reasons why the disclosure would have been useful and stated (380 F. [2d] 212):

"* * * In cases such as this where probable cause for arrest is at issue, rather than the guilt or innocence of the defendant, it matters little whether the informants were truthful in fact, it matters only that in the judge's view, the agents acted reasonably on the basis of all the facts at hand. See Beck v. State of Ohio, 379 U. S. 89, 91, 85 S. Ct. 223, 13 L. Ed. 2d 142 (1964)."

This court had occasion to review the question of disclosure of an informant's identity in State v. Purdy, 278 Minn. 133, 153 N. W. (2d) 254. With respect to probable cause in the Purdy case, we stated (278 Minn. 140, 153 N. W. [2d] 259):

" '* * * If the arrest was effected on the basis of advice furnished by a trustworthy informant, it was sufficient to constitute probable cause for the arrest and to render admissible observations made incident to it.' State v. Emerson, 266 Minn. 217, 220, 123 N. W. (2d) 382, 384, citing Draper v. United States, 358 U. S. 307, 79 S. Ct. 329, 3 L. ed. (2d) 327."

■ It appears from the trial transcript that the prosecutor on direct examination of Officer Bendt asked a series of questions regarding the officer's reasons for going to defendant's apartment. These questions were designed to show the officer's belief that defendant was guilty of the crime charged and that there was probable cause for his arrest. The defense, taking the position that the questions were objectionable and would open the door to some prejudicial answers, moved for a mistrial which the court denied.

The record discloses, however, that defendant's objections to this series

of questions were sustained and in one instance the answer was stricken. The trial court in its charge instructed the jury that any evidence to which an objection was sustained by the court and any evidence ordered stricken by the court must be disregarded by them in arriving at their verdict.

The state thus contends that, if such testimony was inadmissible, the court's immediate action and later use of curative instructions in its charge were sufficient under the circumstances to safeguard defendant's right to a fair trial. The state further contends that these statements had no effect under the rulings and instructions of the court in ultimately determining the guilt or innocence of defendant.

A search of the record indicates that only one person besides Officer Bendt, Officer Jones, the Federal agent, testified regarding hearsay statements of an informant. His statements were elicited only upon cross-examination by defense counsel. The record discloses no direct testimony on the part of the state involving hearsay statements of an informant.

Defense counsel also elicited hearsay statements in regard to defendant's connection with narcotics from Mrs. Lorayne Smith, defendant's landlady. Again, this hearsay testimony was elicited upon cross-examination by defense counsel. When defendant introduces otherwise inadmissible evidence he cannot later complain that permitting the introduction of such testimony was error on the part of the trial court. See, State v. DeZeler, 230 Minn. 39, 41 N. W. (2d) 313, 15 A. L. R. (2d) 1137. The trial court committed no error in refusing to strike such testimony, once it had been elicited by defense counsel, in refusing on that testimony to order the state to disclose the identity of the informant, or in denying the motion for a mistrial.

■ There is testimony in the record that the arresting officers advised defendant of his constitutional rights at the time he was arrested and that defendant was again advised of his rights by Officer Bendt when he arrived at the Narcotics Division Office. While defendant admitted at the trial only that Officer Bendt told him that anything he said could be used against him, the record sufficiently establishes that the officers advised him of his constitutional rights. It might be pointed out that defendant's arrest was made two months prior to the date when the decision in Miranda v. Arizona, 384 U. S. 436, 86 S. Ct. 1602, 16 L. ed. (2d)

694, was handed down, and also that defendant was represented by privately retained counsel in all the proceedings herein, indicating that he knew of his right to counsel and selected his own attorney. This would seem to render moot any question as to whether any of defendant's constitutional rights were denied him. The fact is that no error in this respect was claimed at the time of trial, nor did defendant deny the voluntariness of any statements he made. The only issue at the trial concerning the statements was whether or not defendant in fact made them, and when several police officers testified that he did and he testified he did not, the issue was clearly one of fact for the jury. The trial court committed no error in that regard.

We fail to find that any essential or subtantive rights of defendant were denied. The facts and circumstances disclosed by the record form a complete chain which, in the light of the evidence as a whole, leads directly to the guilt of the accused. It appears that he received a full and fair trial before a jury and that he was convicted upon competent evidence establishing his guilt beyond a reasonable doubt.

Affirmed.