## STATE v. FRED WERBER.

221 N. W. 2d 146.

August 9, 1974—No. 43922.

*Henry H. Feikema* and *Paul J. Luedtke,* for appellant.

*Warren Spannaus,* Attorney General, *Curtis D. Forslund,* Solicitor General, and *Robert F. Carolan,* Special Assistant Attorney General, for respondent.

Heard before Knutson, C. J., and Otis, Rogosheske, and MacLaughlin, JJ., and considered and decided by the court en banc.

OTIS, JUSTICE.

This is an appeal from an order denying defendant's motion for a new trial and a conviction for selling hashish, a derivative of marijuana which is a controlled substance, in violation of Minn. St. 152.09, subd. 1(1); 152.02, subd. 2(3); and 152.15, subd. 1(2). Defendant admitted the sale but interposed the defense of entrapment. The only issue on appeal is whether the trial court erred in denying defendant's motion to require the state to disclose the identity of an informant who introduced defendant to narcotics agents of the Bureau of Criminal Apprehension. We hold that the record does not compel a finding that disclosure of the informant's identity would be sufficiently relevant and helpful to the defense or essential to a fair determination of the issues to make the disclosure mandatory. Accordingly, we affirm.

In December 1971, while returning to college from his Christmas vacation, one Roy Settgas fell into a conversation with the informant while they were riding on a bus. The informant did not at any time disclose his identity to Settgas but claimed to be a graduate of the same college and was interested in buying drugs. He also professed a desire to meet people on campus who might buy drugs from him.

The previous year Settgas had lived on the same dormitory floor with defendant, Fred Werber, and believed that defendant might be interested in buying marijuana which the informant said he had for sale. On January 4, 1972, the informant came to the dormitory room where Settgas resided and told Settgas he had 22 pounds of marijuana for sale and was himself interested in buying chemicals. The informant wanted to be introduced to anyone who would like to sell chemicals or buy marijuana. To that end, Settgas took the informant to defendant's room and introduced him to defendant although he was unaware of the informant's identity. Neither Settgas nor anyone else testified that defendant was known as a seller of drugs.

Defendant took the stand in his own defense. He testified that

on January 4 Settgas introduced him to the informant, who claimed to be a Vietnam veteran and a graduate of the same college, with a master's degree from Berkeley. The informant further represented himself as a dealer who had friends who wanted hashish and chemicals.

The defense of entrapment was based on testimony of defendant in which he claimed, "He [the informant] kind of made me feel it was kind of contingent on the purchase of some marijuana that we sell him some hash and chemicals or find somebody that could." The informant was with defendant from about 8:30 to 11:30 on the evening of January 4, at which time defendant brought together friends who might be interested in purchasing marijuana, which the informant represented as being better than what defendant's friends were smoking and available at a good price. They agreed to meet again in defendant's dormitory at 7 in the evening of January 6.

The informant arrived in defendant's room about 8:30 in the evening of January 6 and with defendant and several of his friends proceeded to smoke defendant's hashish and marijuana furnished by the informant. In half or three-quarters of an hour, the informant left the room. Shortly thereafter defendant went out in the hall and found four or five people talking, including the informant and two strangers. At the trial, the strangers were identified as undercover narcotics agents John Gundersen and Pat Shannon.

Defendant testified that the informant identified Shannon as his supplier of marijuana. The group then drifted back into defendant's room. Defendant's version of what thereafter transpired is as follows:

"A    Well, they continued smoking and socializing and listening to music. People were walking in and out and when—eventually when there was just the two agents, Mr. Shannon and Mr. Gundersen and myself in the room, supposedly they remember Butch being in there, I don't remember him being in there, but that may be true, they brought up the idea of hash, the idea of

they—I think they had known I had some hash and they asked me if I had any.

"Q    What did you tell them?

"A    I said, yes, I have some hash, and they asked me how good it was and I said it was very good, and so then I showed it to them.

"Q    And that's what has been admitted into evidence here, is that correct?

"A    Yes.

"Q    I mean, so far as you know?

"A    So far as I know, that's the same hash. Do you want me to continue?

"Q    Go ahead.

"A    They asked me if I wanted to sell it and I said, no, I didn't, I'm not into dealing and that it's good hash and I won't be able to get ahold of any more anyway, and I have just got this little bit, I said, I don't feel like selling it. So then they continued talking to me about it.

"Q    And in what fashion?

"A    Well, it was sort of—I think the word is pressuring me, in a way. They were—they just kept up asking me and they kept asking me a couple times, not like they were asking for five minutes, but they asked me a couple more times, and so I asked them how much they were willing to pay for it, and then we arrived at—

"Q    Even when you asked them how much they were willing to pay for it had you any intention to sell it to them at that point?

"A    I wasn't sure. My inclination was not to sell it to them, but I don't know.

"Q    You did eventually take from Officer Shannon or Gundersen the sum of $45.00 for the hash, didn't you?

"A    Yes, I did.

"Q    And turned over to them what hash you had, is that right?

"A    Yes.

"Q   Now, aside from any marijuana that the [informant] had brought into the room, did you have any marijuana of your own at that time?

"A   Absolutely none.

"Q   Did you have any other chemicals or drugs of any kind, other than this hash?

"A   None.

"Q   What was it that finally persuaded or induced you to go along with this?

"A   Well, there was several reasons; mainly I felt that feeling of kind of a contingency on buying the marijuana.

"Q   Who created that contingency in your mind?

"A   The grad did, that's the informant, and it was scarce around campus; also I was feeling kind of—well, I was stoned, and so I did feel sort of charitable and I didn't want to get in disfavor with anyone so—

"Q   You wanted to be able to buy some more marijuana?

"A   Yes, well, not more, I wanted to be able to buy some marijuana.

"Q   Excuse me, some marijuana?

"A   Yes.

"Q   Do I understand you to say that this informant left you with the idea that unless you were transferring over the hash there would be no marijuana available?

"A   That was the feeling I got, yes."

Gundersen testified that he and Shannon were introduced to defendant by the informant. Gundersen stated that immediately after he and defendant went into defendant's room, and without solicitation, defendant stated he had some hashish for sale. Some 45 minutes later, Gundersen himself brought up the subject, whereupon defendant showed Gundersen a tinfoil packet containing some 8 grams of hashish for which defendant asked a selling price of $50. After some negotiations, defendant was paid $45 for the hashish.

Both defendant and Gundersen agree that the informant was

not in the room during any of the time when defendant's hashish was discussed or displayed, or when the negotiations concerning the sale and purchase of hashish occurred, or when money changed hands to consummate the transaction. Gundersen denied that the sale of the hashish by defendant was in any way conditioned upon Gundersen's furnishing defendant with a supply of marijuana.

From the inception of these proceedings, defendant has continued to seek from the trial court an order directing the state to disclose the identity of the informant. Defendant has insisted that the informant's testimony was essential to an adequate presentation of the defense of entrapment. All of these motions were denied by the trial court on the grounds of privilege. However, the defense of entrapment was submitted to the jury with instructions to which defendant takes no exception. That defense was vigorously argued to the jury on behalf of defendant. Nevertheless, the jury found defendant guilty as charged.

Upon appeal, defendant argues that the refusal of the state to identify the informant required defendant to take the stand in violation of his Fifth Amendment rights. Defendant insists that the informant is the only link between Settgas and Gundersen, that Settgas may have misrepresented defendant to the informant as being a seller, and that the informant's role in introducing defendant to Gundersen and Shannon was participation in the offense which constitutes the informant a material witness. Defendant further argues that the informant initiated an entrapment and his testimony might show either defendant's reluctance or predisposition to commit the offense. In essence, it is defendant's position that he has a right to interview the informant for the purpose of corroborating defendant's contention that the sale of hashish was provoked only as an inducement to secure marijuana from Gundersen and Shannon. He asserts a right to bring the informant before the jury to reveal the informant's character, his record, and his credibility.

We are of the opinion and hold that on this record the assist-

ance which defendant claims the informant would give in establishing the defense of entrapment is speculative and that the informant's role was not such as to make him a material witness. It is clear that the informant determined from Settgas which students on the college campus might be selling narcotics. There is no dispute but that the informant met defendant through Settgas and subsequently brought together defendant and the two undercover narcotics agents. However, the informant was not present and took no part in the discussions between defendant and Gundersen which resulted in the sale. He was, therefore, not in a position to corroborate or deny defendant's contention that Gundersen offered inducements which constituted an entrapment.

No case has been brought to our attention which requires the disclosure of an informant's identity where his only participation has been to bring together the defendant and the undercover agents. In Roviaro v. United States, 353 U. S. 53, 59, 77 S. Ct. 623, 627, 1 L. ed. 2d 639, 644 (1957), the United States Supreme Court held:

"What is usually referred to as the informer's privilege is in reality the Government's privilege to withhold from disclosure the identity of persons who furnish information of violations of law to officers charged with enforcement of that law. * * * The purpose of the privilege is the furtherance and protection of the public interest in effective law enforcement. The privilege recognizes the obligation of citizens to communicate their knowledge of the commission of crimes to law-enforcement officials and, by preserving their anonymity, encourages them to perform that obligation.

\* \* \* \* \*

"A further limitation on the applicability of the privilege arises from the fundamental requirements of fairness. Where the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privi-

lege must give way. In these situations the trial court may require disclosure and, if the Government withholds the information, dismiss the action."

This court has had occasion to construe the Roviaro rule in State v. Purdy, 278 Minn. 133, 143, 153 N. W. 2d 254, 261 (1967); and State v. DeSchoatz, 280 Minn. 3, 10, 157 N. W. 2d 517, 522 (1968). In the Purdy case, we held "that when a trustworthy informant is a mere transmitter of information and not a competent witness to the crime itself, and the name of the informant is not essential to the defense, the informant's name need not be disclosed when the information was used as a basis for probable cause to search or arrest." 278 Minn. 145, 153 N. W. 2d 262.

The DeSchoatz case turned on our determination that unsupported allegations of a speculative nature were not enough to require the disclosure of an informant's identity. This position has been adopted by a number of other courts. Lannom v. United States, 381 F. 2d 858, 861 (9 Cir. 1967); United States v. Waters, 461 F. 2d 248, 251 (10 Cir. 1972); United States v. Kelly, 449 F. 2d 329 (9 Cir. 1971). In the Kelly case, the court held that it would not require the disclosure of an informant's identity simply because he participated in the crime, where he neither witnessed the crime nor transacted business with the defendant. "Mere speculation that an informer may be of some help is not sufficient to overcome the public interest in the protection of the informer." 449 F. 2d 330.

Cases which have come to our attention holding that active participation by an informant requires disclosure all involved the informant's being an actual witness to the negotiations or the sale. Gilmore v. United States, 256 F. 2d 565 (5 Cir. 1958); Roberts v. State, 489 S. W. 2d 263 (Tenn. Cr. App. 1972); James v. State, 493 S. W. 2d 201 (Tex. Cr. App. 1973); McLawhorn v. North Carolina, 484 F. 2d 1, 6 (4 Cir. 1973).

We are of the opinion that Roviaro v. United States, *supra*, does not require disclosure in the case before us. In Roviaro, the

informant had not only been an active participant in the crime and played a material part in getting drugs into the hands of the accused, but he had been present with the accused at the occurrence of the crime and might have been a material witness on the issue of whether the defendant knowingly transported the drugs.[1] The Supreme Court noted that "the Government's informer was the sole participant, other than the accused, in the transaction charged," and his testimony might have tended to show an entrapment. 353 U. S. 64, 77 S. Ct. 630, 1 L. ed. 2d 647.

The instant case is not unlike United States v. Clark, 482 F. 2d 103 (5 Cir. 1973), where the informer did not participate in the purchase but merely introduced the defendant to the government agent who later made the purchase. There, the Fifth Circuit Court of Appeals affirmed a decision denying the defendant's request to disclose the identity of an informer.

The observations we recently made in State v. Wiley, 295 Minn. 411, 422, 205 N. W. 2d 667, 676 (1973), are pertinent:

"* * * No fixed rule with respect to disclosure is justifiable. The public's interest in protecting the flow of information must be balanced against the individual's right to prepare his defense. Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors."

As applied to the facts of this case, we hold that in balancing the defendant's right to have available any testimony "relevant and helpful" to his defense against the need for law-enforcement officers to maintain sources of information with anonymous informants, defendant has failed to support his burden of showing the need for disclosure. Without reference to whether or not the informant may have erroneously described defendant to Gunder-

---

[1] See, McCray v. Illinois, 386 U. S. 300, 309, 87 S. Ct. 1056, 1061, 18 L. ed. 2d 62, 70 (1967).

sen and Shannon as a drug peddler, the fact remains that defendant made the sale to these agents. Since the informant was not present when the negotiations occurred, he could neither corroborate nor refute defendant's claim that the agents initiated the negotiations and induced defendant, who would otherwise have been reluctant to do so, to sell the hashish in order to obtain marijuana from the agents. We fail to perceive what evidence of entrapment the informant could have provided which was not fully presented to the jury. As we have indicated, the informant's participation consisted entirely of obtaining information from Settgas, conveying it to the narcotics agents, and introducing defendant to them. This, we hold, does not constitute the informant a material witness whose identity must be disclosed.

Affirmed.

MR. CHIEF JUSTICE SHERAN, not having been a member of this court at the time of the argument and submission, took no part in the consideration or decision of this case.