**STATE of Minnesota, Appellant,**

v.

**Randall LENORUD, Respondent.**

**No. C1–87–1164.**

Court of Appeals of Minnesota.

Sept. 29, 1987.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Roger S. Van Heel, Stearns Co. Atty., Mary Yunker, Asst. Co. Atty., St. Cloud, for appellant.

C. Paul Jones, State Public Defender, John E. Kane, Asst. State Public Defender, Minneapolis, for respondent.

Heard, considered and decided by POPOVICH, C.J., and NORTON and LOMMEN,* JJ.

## OPINION

A. PAUL LOMMEN, Judge.

This pretrial appeal by the state is from an order for an *in camera* hearing to determine whether a government informer should be disclosed to the defendant, respondent Randall Lenorud. We affirm.

## FACTS

Respondent Randall Lenorud is charged with the sale of a controlled substance, marijuana, under Minn.Stat. §§ 152.01, subds. 4 and 9, 152.09, subd. 1(1) (1986). Lenorud allegedly sold five ounces of marijuana to an undercover police officer on November 12, 1986 in the parking lot of the St. Cloud Holiday Inn, and 2.3 ounces to the same officer on November 17, in the same location.

Lenorud claims he was entrapped by a person he knew as "Ernest Brown," whom

* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. 6, § 2.

he claims is a government informant. Lenorud sought discovery of the real name, address and phone number of "Ernest Brown," and information on his involvement in the investigation of Lenorud. The trial court held a hearing to allow Lenorud to make a prima facie case for further inquiry by means of an *in camera* hearing. *See Syrovatka v. State*, 278 N.W.2d 558, 562 (Minn.1979).

Lenorud testified he met Brown at a party about two to four months before the offense. Lenorud testified he had never sold marijuana before or been in possession of any "major" amounts.

Lenorud testified Brown brought up the subject of selling marijuana three or four months before the offense. Brown suggested they could "make some money" if he knew where they could get some marijuana. Lenorud testified he refused this proposition, but Brown kept asking him, calling him both at home and at work. Lenorud refused "[a] couple times," and Brown "would always bring it up." Lenorud testified he refused to get involved because "I didn't know where I could get any, plus I didn't want to get busted."

Eventually, Lenorud testified, Brown talked him into it. Brown made it sound like easy money, telling Lenorud he knew a buyer who was "just stupid," and would pay $500 for a half-pound of marijuana of any quality.

Lenorud testified he accompanied Brown on a trip to the Twin Cities, Brown driving his own car. They saw some marijuana growing off the highway and stopped to pick it. They drove to the cities, where Brown tried unsuccessfully to sell it. When they returned to St. Cloud, Brown set up the sale at the Holiday Inn. Brown called Lenorud at work, and later drove him over to the Holiday Inn parking lot, where Lenorud protested he did not really want to do it, but Brown assured him it would work. Lenorud left Brown's car, walked over to the undercover agent's car, and made the sale. They then split the money and Brown drove Lenorud back to work.

Several days later, the agent called Lenorud, and asked him to sell him some more. Lenorud called Brown to ask him what was left. Lenorud went over to Brown's house, got the rest of the marijuana, and met the undercover agent in the same parking lot to make the second sale. Lenorud testified he made the second sale himself because "it worked so smooth the first time."

The trial court found, based on Lenorud's testimony, that Brown was a witness to the first sale, and that Brown participated in obtaining the marijuana and in inducing Lenorud to sell it. The court also noted Lenorud's claim that Brown represented he knew the buyer well and had sold cocaine to him. The court ordered an *in camera* hearing to be scheduled by the court administrator, with each party to present written questions. The state claims Lenorud has received notice of the time and place of the hearing, which is set during normal business hours.

## ISSUE

Did the trial court clearly err in ordering an *in camera* hearing?

## ANALYSIS

The supreme court has stated the standard for ordering an *in camera* hearing disclosure for an asserted entrapment defense:

> Rather than reject out of hand the suggestion that the informant might have information relevant to entrapment, the court should consider the matter *in camera*. However, courts should not require *in camera* disclosure solely on the basis of speculation by the defendant that the informant's testimony might be helpful. The defendant must explain precisely what testimony he thinks the informant will give and how this testimony will be relevant to a material issue of guilt or innocence.

*Syrovatka v. State*, 278 N.W.2d at 562.

■ Lenorud's testimony established a prima facie case of entrapment. Lenorud testified Brown initiated the first illegal transaction. *See State v. Grilli*, 304 Minn. 80, 89, 230 N.W.2d 445, 452 (1975) (evidence on entrapment focuses first on whether police initiated the offense). Brown overcame Lenorud's reluctance to get involved,

thus doing more than merely soliciting the commission of the crime. *State v. Olkon,* 299 N.W.2d 89, 107 (Minn.1980). Accepting Lenorud's testimony for purposes of the motion, Brown "persua[ded], badger[ed], or pressure[d]" him into committing the offense. *Id.* He not only persuaded Lenorud to make the sale, participated in it to a considerable extent.

Lenorud testified he had never sold marijuana, and put up considerable resistance to the idea. Therefore, he established at least a prima facie case of lack of predisposition. *Cf. United States v. Resnick,* 745 F.2d 1179, 1186 (8th Cir.1984) (defendant who initially delivered drugs at another dealer's apartment and presented only some uncertainty thereafter did not establish lack of predisposition).

The defendant seeking an *in camera* hearing need not prove entrapment, he must only demonstrate to the court that the defense is not merely speculative, and has some chance of prevailing. *Syrovatka,* 278 N.W.2d at 562. Lenorud met this burden. Since we conclude the trial court's order was not clearly erroneous, we need not determine whether the state has shown such an order "significantly reduces the likelihood of a successful prosecution." *State v. Kim,* 398 N.W.2d 544, 551 (Minn. 1987).

The state argues the terms of the court's order, and the fact Lenorud has received notice of the time and place of the hearing, already threaten confidentiality. This issue, however, has not been addressed to the trial court. The details of the court's order are best worked out with the trial court. We suggest only that the *in camera* hearing can be conducted at a time both convenient to the court and not conducive to improper monitoring.

### DECISION

The trial court did not clearly err in ordering the *in camera* hearing.

Affirmed.