John SYROVATKA, Petitioner, Appellant,

v.

STATE of Minnesota, Respondent.

No. 48309.

Supreme Court of Minnesota.

April 20, 1979.

---

C. Paul Jones, Public Defender, and Gregory A. Gaut, Asst. Public Defender, Minneapolis, for appellant.

Warren Spannaus, Atty. Gen., Thomas L. Fabel, Deputy Atty. Gen., Craig H. Forsman, Sp. Asst. Atty. Gen., St. Paul, Richard A. Peterson, County Atty., Hutchinson, for respondent.

WAHL, Justice.

Defendant was found guilty by a district court jury of a charge of unlawful sale of marijuana, Minn.St. 152.02, subd. 2(3), and 152.09, subd. 1(1), and was sentenced by the trial court to a term of 1 to 10 years in prison, Minn.St. 152.15, subd. 1(2). Defendant did not appeal from judgment of conviction, which was entered in 1975; but in 1977, when he was free on parole, he filed a petition for postconviction relief. This appeal, which is from the order denying postconviction relief, raises issues relating to the refusal of the trial court to compel disclosure of the identity of an informant and the admission of certain evidence. We remand for an *in camera* hearing to determine the materiality of the informant's testimony.

The key witness for the state was Timothy Shanley, a 23-year-old undercover agent from the Bureau of Criminal Apprehension. Shanley testified that in October 1974, he went to Hutchinson in response to a request for help by that city's chief of police. The incident with which we are concerned occurred early in the evening of November 29, 1974. Shanley testified that he was riding as a passenger in a blue Volkswagen driven by an unnamed paid informant who had preceded him to Hutchinson when he observed a van driven by defendant. On the basis of information which he had received that defendant had been convicted in 1971

of selling marijuana,[1] Shanley had the informant pull up along the left side of the van.

Shanley asked defendant if he could buy some marijuana, saying that Gregg Popp had said defendant had some. According to Shanley, defendant's reply was that he would have to check with Gregg, and, if that was correct, he would then return with marijuana, meeting Shanley at a turn-around by a school at the edge of town. Shanley testified that he and the informant then went to a turn-around and waited for defendant, who arrived in the van 5 minutes later, parking about 30 feet away in the opposite direction from the informant's car. He testified that he told the informant to keep his back turned and not to witness the exchange. He then got out and walked to where the defendant was, near the back of the van. Because the van had "mirror windows," Shanley could not see into the van, so he did not know if there was anyone with defendant. Shanley testified that defendant sold him 2 lids (1.3 ounces) for $30 and then left immediately.

Shanley testified on cross-examination that when he returned to his car he did not show the informant what he had purchased but did tell him that he had purchased 2 lids for $30.

Defendant, who admitted having been convicted in 1971 and serving time in St. Cloud for selling 2 lids of marijuana, testified that two people were with him in the van on the night in question—Debra Horton, who lived with him at Buffalo Lake and owned the van, and Michael Paulson. He testified that when Shanley asked him if he had marijuana for sale, he asked Shanley who had told him that he sold marijuana. He testified that Shanley had told him that "Gregg Popp told me to ask you," and that his reply was, "Well, I will have to talk to Gregg about that." He testified that Shanley then proposed to meet him at the turn-around later and that he had replied, "We'll see."

Defendant testified that he then went and called Gregg Popp and asked him if he had friends in a blue Volkswagen and if he had referred them to him. Defendant testified that Popp's response was that he knew the people but had not referred them to defendant.

Defendant testified that he and his companion then drove to the turn-around, where he got out and talked with Shanley. He testified that he did not sell Shanley any marijuana and in fact did not have any to sell, and that what he had said to Shanley was, "I don't deal. I wish you would get off my back and leave me alone." He testified that he then got back in the van and left. Horton and Paulson corroborated defendant's testimony.

The state called Gregg Popp as a rebuttal witness. Popp, who admitted that he recently had pleaded guilty to one of a number of drug sale charges against him and that he was awaiting sentencing, testified that defendant called him and asked him if he knew anyone in a blue Volkswagen and if he knew anything at all about them. He testified that his response was, "All I know is I think they are cool." Over defendant's vigorous objection, the prosecutor was permitted to elicit from Popp testimony that within the last year he had purchased an ounce of marijuana from defendant for $13 to $15.

■ 1. The first of the two main issues raised by defendant is whether the trial court committed reversible error in refusing to compel disclosure of the informant's identity. The leading United States Supreme Court case dealing with the privilege relating to the identity of informers in the context of a criminal trial is *Roviaro v. United States*, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957). Roviaro was charged with transporting heroin and then selling it

---

1. Defense counsel elicited this fact from Shanley because he knew that defendant was going to testify and that, therefore, it would come out anyway. We express no opinion as to whether under the Rules of Evidence the prosecutor would have been permitted to impeach defendant's credibility by questioning him about this prior offense. See, Rule 609 and our recent decision in *State v. Jones*, 271 N.W.2d 534 (Minn.1978).

to "John Doe," an undercover government employee. "Doe," while under both visual and audio surveillance, made a controlled buy from Roviaro. In other words, he was more than an informant or tipster, but was a participant in the transaction. Concluding that the trial court prejudicially erred in refusing to compel disclosure, the court stated that there was no fixed rule with respect to disclosure and that the problem called for a balancing of public interest in protecting the flow of information about crime from informants against a defendant's right to prepare his defense. The court said that circumstances which should be considered include the crime charged, the possible defenses, and the possible significance of the informer's testimony, and that disclosure is required whenever it is "relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause." 353 U.S. 60, 77 S.Ct. 628, 1 L.Ed.2d 645. Applying the balancing test in the case before it, the court concluded that disclosure was mandated.

"The circumstances of this case demonstrate that John Doe's possible testimony was highly relevant and might have been helpful to the defense. So far as petitioner knew, he and John Doe were alone and unobserved during the crucial occurrence for which he was indicted. Unless petitioner waived his constitutional right not to take the stand in his own defense, John Doe was his one material witness. Petitioner's opportunity to cross-examine [the agents] was hardly a substitute for an opportunity to examine the man who had been nearest to him and took part in the transaction. Doe had helped to set up the criminal occurrence and had played a prominent part in it. His testimony might have disclosed an entrapment. He might have thrown doubt upon petitioner's identity or on the identity of the package. He was the only witness who might have testified to petitioner's possible lack of knowledge of the contents of the package that he 'transported' from the tree to John Doe's car. * * *

"Finally, the Government's use against petitioner of his conversation with John Doe while riding in Doe's car particularly emphasizes the unfairness of the nondisclosure in this case. The only person, other than petitioner himself, who could controvert, explain or amplify [the agent's] report of this important conversation was John Doe. Contradiction or amplification might have borne upon petitioner's knowledge of the contents of the package or might have tended to show an entrapment.

"This is a case where the Government's informer was the sole participant, other than the accused, in the transaction charged. The informer was the only witness in a position to amplify or contradict the testimony of government witnesses. Moreover, a government witness testified that Doe denied knowing petitioner or ever having seen him before. We conclude that, under these circumstances, the trial court committed prejudicial error in permitting the Government to withhold the identity of its undercover employee in the face of repeated demands by the accused for his disclosure." 353 U.S. 63, 77 S.Ct. 629, 1 L.Ed.2d 647.

Judge Weinstein in his treatise discusses the *Roviaro* case, as well as Supreme Court Standard 510,[2] in detail. 2 Weinstein's Evidence, United States Rules, § 510[06]. He identifies a number of factors which a court should consider in determining whether disclosure of the informant's identity is necessary to a fair determination of the issue of a criminal defendant's guilt or innocence:

(a) Whether the informant was a material witness. Specifically, Weinstein states:

" * * * If the informant was an eyewitness to the crime, the courts have at times, ordered disclosure; if he was merely a participant in the crime, but not

---

2. Some of the rules of evidence promulgated by the U.S. Supreme Court in 1972 were omitted by Congress when it adopted the Federal Rules of Evidence. Rule 510, dealing with the privilege relating to identity of informers, was one of these. Judge Weinstein treats these as standards which, because they were promulgated by the Court, have utility to the bench and bar.

a witness, the courts would protect his identity. Even if the informant was an eyewitness, Standard 510 requires the judge to order disclosure only if he finds on the basis of an *in camera* showing or hearing that there is a reasonable probability that the informer's testimony is necessary to a fair determination of guilt or innocence." Id. p. 510–40.

(b) Whether informer's testimony will be material to the issue of guilt. If there is little likelihood that an informer's testimony will be helpful to defendant in overcoming an element of the crime charged, the disclosure is not required.

(c) Whether testimony of officers is suspect. If the court has some good reason to doubt the credibility of the officers who testify against defendant, then the court should examine the informant *in camera* to establish whether his testimony would be necessary to a fair determination of the defendant's guilt.

(d) Whether the informant's testimony might disclose entrapment. According to Weinstein, "Even if the informer's testimony would be relevant to an entrapment defense, the courts have been loath to order disclosure when they feel that the defense would be unavailing." Id. p. 510–48. Rather than reject out of hand the suggestion that the informant might have information relevant to entrapment, the court should consider the matter *in camera.* However, courts should not require *in camera* disclosure solely on the basis of speculation by the defendant that the informant's testimony might be helpful. The defendant must explain precisely what testimony he thinks the informant will give and how this testimony will be relevant to a material issue of guilt or innocence.

Cases of this court are in accord with this rule. See, e. g., *State v. Luciow,* 308 Minn. 6, 240 N.W.2d 833 (1976); *State v. Villalon,* 305 Minn. 547, 234 N.W.2d 189 (1975), and *State v. Werber,* 301 Minn. 1, 221 N.W.2d 146 (1974).

In the instant case it is clear from the record below that the informant was a witness to the first conversation between Shanley and defendant. However, the record indicates that the informant remained in the car during the alleged drug transaction, that the car was parked in the opposite direction of the van, that the vehicles were 30 feet apart, that the informant was told to keep his back turned and not to witness the transaction, and that Shanley positioned himself so that his body was between defendant and the vehicle in which the informant was sitting. There was only a minor dispute as to what was said during the first conversation. Shanley testified that defendant told him that he would have to check with Gregg Popp and that, if what Shanley had said was correct, he would return with marijuana for sale. Defendant and his witnesses testified that defendant simply said he would see whether or not he would return after he had talked to Gregg Popp.

The real dispute was over what was said and done at the time of the alleged transaction. The record that we have suggests that the informant was too far away to hear what was said, and Shanley's testimony was that he told the informant not to witness the transaction. Nonetheless, we think it would have been appropriate for the trial court to hold an *in camera* hearing at which the court could have interviewed the informant or at least received an affidavit from him about whether he heard any of this second conversation or saw what occurred then. Accordingly, we remand for an *in camera* hearing to determine whether there is a reasonable probability that the informant's testimony was necessary to a fair trial. *State v. Luciow,* 308 Minn. 6, 240 N.W.2d 833, 245 N.W.2d 235 (1976). If the court determines that there is a reasonable probability that the informant's testimony is material, the court should order a new trial. If the court does order a new trial and the state elects not to disclose the informant's identity, the court should dismiss the charges. *State v. Luciow, supra.* If the trial court determines there is no reasonable probability that the informant's testimony was necessary to a fair trial, the judgment of conviction is affirmed.

■ 2. Defendant's second contention is that prejudicial error was committed when the trial court permitted the prosecutor to elicit testimony from Popp about his purchase of marijuana from defendant within the year preceding trial.

The prosecutor, in chambers, prior to calling Popp as a rebuttal witness, told the court that he planned to question Popp not just about the telephone conversation with defendant on the 29th but also about a prior purchase of marijuana he made from defendant. Defense counsel objected to this on a number of grounds, including lack of a Spreigl notice, irrelevancy, and improper rebuttal. The prosecutor countered that it was not a Spreigl issue but that defendant during his testimony had put his character in issue when he testified that he told Shanley, "I don't deal." The court ruled that it was proper rebuttal and permitted the question.

While the prosecutor apparently has abandoned the argument that defendant put his character in issue, he does not admit error. Rather, the prosecutor argues that the evidence of the prior sale of marijuana to Popp had "an independent basis for admission other than any impeachment effect it may have had." Specifically, the prosecutor argues that it showed a common scheme or plan on defendant's part and was therefore admissible.

It is true, as the prosecutor points out, that the state did not give defendant a pretrial notice of intent to introduce the evidence, but this is understandable since the prosecutor apparently did not intend to introduce the evidence during the state's case in chief. Normally, when the prosecutor seeks to introduce evidence of this type a midtrial evidentiary hearing, out of the jury's presence, should be held to determine whether the evidence is admissible in rebuttal. Here there was a midtrial hearing, but

the court did not reach the issue of whether the evidence was admissible under one of the exceptions to the general rule excluding other-crime evidence because the court agreed with the prosecutor that defendant had put his character "in issue." If the hearing had focused on the issue of whether the general exclusionary rule applied, the dispute would have centered on whether the alleged sale to Popp and the alleged sale to Shanley were sufficiently closely related in time, as required by our cases. See, *State v. Billstrom*, 276 Minn. 174, 149 N.W.2d 281 (1967). We do not reach that issue. Even if the admission of this evidence had been error under Billstrom, the error was nonprejudicial in the context of this case, since the jury already was aware that defendant had a prior conviction for selling marijuana and the evidence of defendant's guilt was strong.

3. The final issues relate to whether the trial court erred in permitting the prosecutor to elicit from Shanley (a) testimony that he later told a fellow agent he had purchased marijuana from defendant, and (b) testimony that he delayed arresting defendant because he was continuing his investigation into drug trafficking in Hutchinson and did not want to blow his cover.

■ (a) Defendant cannot legitimately complain about the prosecutor's eliciting testimony from Shanley on redirect that after the purchase Shanley told a fellow agent about the purchase. Defense counsel himself earlier elicited on cross-examination similar evidence, specifically that after the purchase Shanley told the informant about the purchase.[3]

■ (b) There is no merit to defendant's complaint about Shanley's testifying on redirect that he delayed the arrest because he was continuing his investigation into drug trafficking in the Hutchinson area and did

---

**3.** Rule 801(d)(1)(D), Rules of Evidence, not applicable in this case, provides that statements such as this are admissible if the declarant testifies and is subject to cross-examination and if the statement of present sense impression was made by the declarant perceiving the event or immediately thereafter.

not want to blow his cover. Defendant contends that this evidence had the effect of improperly raising the issue of the entire problem of drug trafficking in the Hutchinson area. This may be true, but defense counsel did not object to similar evidence introduced earlier in the trial; and, further, defense counsel in his cross-examination of Shanley had raised the matter of defendant not having been arrested until 10 days after the offense. Finally, it was made clear that defendant was not involved in the other transactions.

Remanded with directions.