STATE of Minnesota, Appellant,

v.

Timothy Joel RENNEKE, Respondent.

No. C1–96–2421.

Court of Appeals of Minnesota.

May 27, 1997.

Hubert H. Humphrey, III, Attorney General, St. Paul, for appellant.

Thomas J. Harbinson, Scott County Attorney, Susan K. McNellis, Diane Hanson, Assistant County Attorneys, Shakopee, for appellant.

Eric W. Hageman, Bennett, Brown, Ingvaldson & McNeil, P.A., Minneapolis, for respondent.

Considered and decided by WILLIS, P.J., and RANDALL and EDWARD D. MULALLY*, JJ.

## OPINION

EDWARD D. MULALLY, Judge.

This appeal is from a pretrial order granting respondent Timothy Renneke's motion to compel discovery of various documents in the personnel file of the arresting officer. We reverse and remand.

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by ap-

## FACTS

The complaint alleges that a Scott County deputy sheriff stopped Renneke's car after clocking it at 70 m.p.h. in a 55 m.p.h. zone. According to the complaint, the deputy approached the vehicle and asked Renneke for his driver's license. Renneke refused to display his license and allegedly began yelling profanities, then got out of his car and began moving towards the deputy. The complaint alleges that the deputy attempted to subdue Renneke, who lunged at him and resisted the deputy's attempts to handcuff him. The deputy sprayed pepper mace at Renneke, which ended his resistance. The complaint charged Renneke with gross misdemeanor obstruction of legal process and speeding.

Renneke moved for discovery of the deputy's personnel file, claiming that the deputy had repeatedly struck him as well as maced him. Renneke indicated that he received medical treatment as a result of the incident. He gave notice of his intent to rely on a claim of self-defense, alleging that the deputy had used excessive force.

At the pretrial hearing, the trial court indicated that the personnel file was public data and therefore subject to discovery. The trial court later issued a written order requiring Scott County officials to provide copies of the following records in the deputy's employment file: (1) the existence and status of any complaints still under investigation; (2) all "related data" concerning "concluded matters," defined to include all matters not still under investigation. The state filed this appeal.

## ISSUES

1. Is the state required to show critical impact of the discovery order?

2. Did the trial court abuse its discretion in ordering disclosure of the documents in the personnel file without having conducted an in camera review?

## ANALYSIS

### I.

Renneke argues that the state must show that the trial court's discovery order will

pointment pursuant to Minn. Const. art. VI, § 10.

have a critical impact on the outcome of the prosecution. *See State v. Webber,* 262 N.W.2d 157, 159 (Minn.1977) (original judicial statement of "critical impact" rule). The trial court's order compelling disclosure of data from the personnel file has no direct effect on the evidence to be presented at trial, however, its effect on the outcome of the proceeding is speculative.

■ The state in a pretrial appeal must show that the trial court clearly and unequivocally erred and that the error will have a critical impact on the proceedings. However, the "critical impact" requirement originally applied specifically to suppression orders. *See State v. Joon Kyu Kim,* 398 N.W.2d 544, 550–51 (Minn.1987) (noting history of the "critical impact" rule and origin in statute requiring that suppressed evidence have a critical impact on prosecution). In a number of cases, this court has held that the critical impact requirement does not apply to discovery orders. *See, e.g., State v. Cain,* 427 N.W.2d 5, 9–10 (Minn.App.1988); *State v. Solheim,* 477 N.W.2d 785, 786–87 (Minn.App. 1991) (order requiring disclosure of confidential informant).

In 1984, this court affirmed a discovery order because it would not have a critical impact on the outcome of the trial. *State v. Hunter,* 349 N.W.2d 865, 866 (Minn.App. 1984). But the greater weight of the authority, which is supported by the history of the "critical impact" rule, exempts discovery orders from the critical impact requirement.

This court has held that the "critical impact" rule extends to a pretrial order refusing to exclude defense evidence. *State v. Jones,* 518 N.W.2d 67, 68–69 (Minn.App. 1994), *review denied* (Minn. July 27, 1994). But such an order is still a ruling that directly impacts the evidence admissible at trial, and therefore can have a "critical impact" on the outcome of trial. The rationale of *Jones* does not extend to discovery orders.

■ We conclude that the state is not required to show critical impact from the discovery order in this case.

## II.

■ A trial court has considerable discretion in granting or denying discovery requests and its decision will not be reversed absent a clear abuse of discretion. *See Erickson v. MacArthur,* 414 N.W.2d 406, 407 (Minn.1987). Much of the trial court's analysis here, however, involves construction of the Government Data Practices Act (Act). The construction of a statute is a question of law that is subject to de novo review on appeal. *See Hibbing Educ. Ass'n v. Public Employment Relations Bd.,* 369 N.W.2d 527, 529 (Minn.1985).

The trial court's order is based on its construction of the following provision in the Act:

> Except for employees described in subdivision 5, the following personnel data * * * [is] public:
>
> *  *  *  *  *  *
>
> (4) the existence and status of any complaints or charges against the employee, regardless of whether the complaint or charge resulted in a disciplinary action;
>
> (5) the final disposition of any disciplinary action together with the specific reasons for the action and data documenting the basis of the action, excluding data that would identify confidential sources who are employees of the public body.

Minn.Stat. § 13.43, subd. 2(a) (1996).

■ The trial court ordered disclosure of the existence and status of any complaints still under investigation and all data regarding "concluded matters," which the court defined to include all matters not still under investigation. The trial court did not review the file in camera. The court did balance Renneke's need for the data against the confidentiality interests involved, but only as an alternative to its analysis that the data were public and therefore discoverable.

The statutory provision governing personnel data makes public

> the existence and status of any complaints or charges against the employee, regardless of whether the complaint or charge resulted in a disciplinary action.

*Id.* § 13.43, subd. 2(a)(4). The trial court, however, ordered disclosure of the existence and status of only those complaints or charges that were under "ongoing investigation." This is too restrictive, as the statute does not restrict this limited disclosure to "ongoing investigations." But the other part of the trial court's order is too broad in ordering discovery of related data.

■ The Act does not make public any details about a complaint or charge unless there has been a "final disposition of any disciplinary action." *Id.* § 13.43, subd. 2(a)(5). The trial court, however, ordered this broader disclosure of underlying data as to any "concluded matter." That term does not appear in the Act. The trial court, however, used it instead of the statutory term "final disposition," because it interpreted the term "disciplinary action" to refer to the punitive sanction, rather than the entire disciplinary process, and concluded that this interpretation resulted in an absurd result.

■ The term "disciplinary action" refers to the entire disciplinary process prompted by the complaint or charge against the employee, not just the sanction that may result. The legislature has specified what procedures must be followed in disciplining a police officer. Minn.Stat. § 626.89 (1996). The process begins with the filing of a signed written complaint. *Id.,* subd. 5. But the statute provides for discovery, the right to an attorney, and the right to give a formal statement. *Id.,* subds. 6, 7, 9. The mere investigation of a citizen complaint, without any attempt to impose discipline on the police officer, is not a "disciplinary action." Even if it were, the Act makes the data public only if there is a "final disposition." *Id.* § 13.43, subd. 2(a)(5). We cannot agree that every "concluded matter," even one in which no action has been taken on the complaint, is a "disciplinary action" on which a "final disposition" has been made.

The trial court's construction of the statute is also contrary to this court's opinion in *Demers v. City of Minneapolis,* 486 N.W.2d 828, 831 (Minn.App.1992). *Demers* construes the same provision of the Act as making investigative data on allegations of excessive force nonpublic personnel data unless some disciplinary action has been taken. *Id.*

We therefore conclude the trial court erred in construing Minn.Stat. § 13.43, subd. 2(a)(4) as making public only the "existence and status" of complaints or charges that are still under investigation. We also conclude the court erred in construing Minn.Stat. § 13.43, subd. 2(a)(5) as making public underlying data regarding "concluded matters" that are not "final disposition[s] of [a] disciplinary action." But our analysis does not end here.

■ The Act allows disclosure of nonpublic data if the court has determined that the data are discoverable under applicable rules (including the rules of criminal procedure), and if the court finds that the benefits to the party seeking access outweigh any harm to the confidentiality interests involved. *Id.* § 13.03, subd. 6. While the trial court here set forth this analysis as an alternative basis for ordering discovery, it did not review the file in camera before ruling.

The supreme court stated in *State v. Paradee,* 403 N.W.2d 640, 642 (Minn.1987):

> The in camera approach strikes a fairer balance between the interest of the privilege holder in having his confidences kept and the interest of the criminal defendant in obtaining all relevant evidence that might help in his defense.

The cases Renneke cites to support discovery of police internal investigation files all emphasize the need for in camera review. *See Erickson,* 414 N.W.2d at 409; *State, City of Minneapolis v. Lynch,* 392 N.W.2d 700, 706 (Minn.App.1986); *State v. Hopperstad,* 367 N.W.2d 546, 549 (Minn.App.1985).

Renneke argues that Minn.Stat. § 13.03, subd. 6, does not require in camera review. But in order to apply the balancing test required by the Act, the court must be able to assess the benefits of disclosure to the party seeking them and the harm from disclosure. Renneke does not explain how these factors can be assessed without in camera review. Nor does he cite any case allowing disclosure under Minn.Stat. § 13.03, subd. 6, without in camera review.

We must remand for in camera review of the arresting officer's personnel file to determine whether any nonpublic data should be disclosed under Minn.Stat. § 13.03, subd. 6. We conclude, moreover, that some comment on the proper analysis of the balancing test under that statute is required.

■ Renneke seeks disclosure of the deputy's personnel file on the assumption that there are citizen complaints in the file against the deputy for the use of excessive force and that these would support Renneke's claim of self-defense. That type of evidence, however, would not be admissible to show Renneke's apprehension of the deputy unless Renneke was personally aware of the complaints, which he does not appear to claim. *See State v. Bland*, 337 N.W.2d 378, 383 (Minn.1983). Any prior incidents of excessive force, even if proven, are not admissible to show the deputy used excessive force against Renneke. *Id.* They may be admissible, as "reverse *Spreigl*" evidence, if they are sufficiently similar to the incident at issue, and if the other requirements for admission of *Spreigl* evidence are met. *See State v. Robinson*, 536 N.W.2d 1, 2 (Minn.1995). Renneke, however, was stopped for speeding, an ordinary traffic offense that would generally not involve the driver leaving the vehicle. Not all claims of excessive force would be sufficiently similar to this situation to warrant disclosure.

■ The trial court also found that complaints against the deputy could be relevant to show the deputy's motive to accuse Renneke of obstruction of legal process. Although *Spreigl* evidence may be admitted to prove motive, the motive referred to is the motive for commission of the criminal offense. *See, e.g., State v. Gorman*, 532 N.W.2d 229, 234 (Minn.App.1995) (*Spreigl* may be admitted to prove motive even though motive is not an element of the offense), *aff'd*, 546 N.W.2d 5 (Minn.1996). The motive for a police officer to arrest a suspect, or to describe an incident in a certain way in a police report, is not an issue for the jury, except in determining the credibility of the officer's testimony. To allow discovery of prior complaints against an officer solely on the ground that they may possibly bear on the officer's credibility is too broad. It could support such disclosure in almost every criminal prosecution.

Finally, the trial court's assessment of the confidentiality interest at stake as being "minor embarrassment" to the deputy is plainly inadequate. For a police officer to face the continual resurrection of old personnel complaints, no matter how unfounded, every time he or she makes an arrest leading to criminal charges, is more than a minor embarrassment. Over time, it could become a considerable deterrent to an officer's vigorous enforcement of the law. The trial court on remand should balance Renneke's right to discovery of potentially exculpatory evidence, including evidence that could be admissible as "reverse *Spreigl* evidence," against the significant confidentiality interests recognized by the Government Data Practices Act.

## DECISION

The trial court erred in determining those portions of the arresting officer's personnel file that are public data. The court abused its discretion in ordering disclosure of nonpublic data without first reviewing the file in camera. The matter is remanded for in camera review and further proceedings consistent with this opinion.

**Reversed and remanded.**