STATE of Minnesota, Respondent,

v.

**Johnny RAMBAHAL, Appellant.**

**No. A07–512.**

Supreme Court of Minnesota.

June 19, 2008.

David Lorin Warg, O'Connell, Wermager & Warg, Hastings, MN, Mark D. Nyvold, St. Paul, MN, for Appellant.

Thomas Earl Lockhart, Special Staff Assistant County Attorney, Hastings, MN, Attorney General—Criminal, St. Paul, MN, for Respondent.

OPINION

GILDEA, Justice.

Appellant Johnny Rambahal is charged with violating Minn.Stat. § 624.713, subd. 1(b) (2006), which prohibits him from possessing a pistol because of a prior conviction for a crime of violence. In the course of discovery, the State disclosed two police reports from a separate robbery investigation. These police reports contain statements of a "concerned citizen," whom Rambahal argues has exculpatory information in his case. Rambahal successfully moved the district court for an order compelling disclosure of the citizen informant's identity. The State appealed the order, and in an unpublished decision, the court of appeals reversed. *State v. Rambahal,* No. A07–512, 2007 WL 2770261 (Minn. App. Sept. 25, 2007). Rambahal now appeals. Because we conclude that the court of appeals erred in assessing the potential helpfulness of the informant's identity to the defense, we reverse. But because we also conclude that the district court erred in ordering disclosure without considering the public interest, we remand to the district court for further proceedings.

This action arises from a Burnsville police officer's encounter with Rambahal on January 1, 2007. The complaint alleges that the officer encountered two males walking down the middle of a county road in Dakota County shortly before 1:00 a.m. on New Year's Day. When the officer got out of her vehicle and approached the men, they verbally identified themselves as Rambahal and Donta Holley. Based on her prior dealings with the two men, the officer radioed for additional officers to come to the scene. The officer also learned from dispatch that there was an

outstanding felony warrant for Rambahal. The officer arrested Rambahal on the outstanding warrant. In the course of a pat-down search, another officer discovered a nearly full box of .357–caliber ammunition on Rambahal. Rambahal also had several loose rounds of the same type of ammunition on his person.

After placing Rambahal in the back of her squad car, the officer conducted a search of the immediate area incident to his arrest. The officer found a loaded .357–caliber pistol "on top of the newly fallen snow next to where Rambahal was standing when [the officer] initially had contact with him." The record does not indicate where Holley was standing in relation to Rambahal or to where the pistol was found. The pistol contained three live rounds, and three rounds had been fired. The ammunition in the pistol was the same caliber as was found on Rambahal.

Rambahal and Holley both waived their *Miranda* rights. Rambahal told the officer that the pistol did not belong to him and that he did not know who owned the pistol. Holley told the officer that Rambahal carried the pistol for protection and that upon seeing the officer, Rambahal dropped the pistol on the ground.

On January 3, 2007, Rambahal was charged with possessing a firearm in violation of Minn.Stat. § 624.713, subd. 1(b), which prohibits "a person who has been convicted of * * * a crime of violence" from possessing a pistol. Rambahal has a prior conviction for third-degree burglary in Ramsey County and is therefore prohibited from possessing a firearm under the statute.

In the course of discovery and about 2 weeks before trial, the State disclosed to defense counsel two police reports pertaining to a string of aggravated robberies in Burnsville.[1] The police reports state that a Burnsville police officer spoke with a citizen informant on December 29, 2006, regarding an aggravated robbery of a Burger King restaurant and of a Kwik Trip store earlier in December 2006. The informant, whose name was not included in the reports, told police he "was scared to have a name on the report because of the level of danger presented by the group committing the robberies."

The reports reflect that the informant identified a number of individuals as the perpetrators of the robberies, including Holley, Rambahal's brother, and another individual. The informant also described the weapon that was used in the robberies.[2] The informant stated that he learned from Rambahal that Holley owned the pistol used in the robberies and that Holley was known to carry the pistol under the seat of his vehicle. The informant also stated that his cousin had seen Holley hold the pistol and that the cousin heard Holley say that he should take his pistol and "go get" a person who had made Holley mad.

After receiving the reports and pursuant to Minn. R.Crim. P. 9.01, subd. 2(3), Rambahal moved the district court to order the State to disclose the identity of the informant referenced in the police reports. The court heard oral arguments on the issue and thereafter ordered the State to disclose the identity of the informant. In its order, the court found that testimony by the informant that the pistol belonged to Holley would be helpful to Rambahal in overcoming an element of the offense with

---

1. These two reports cover the same events with minor variations and appear to be written by the same police officer, but it is unclear from the record why there are two versions.

2. The parties do not dispute that the pistol used in the robberies is same pistol Rambahal is charged with possessing on January 1, 2007.

which he was charged and that it could help Rambahal find other individuals who could corroborate the informant's information regarding the ownership of the pistol.

The State appealed the district court's order. In an unpublished decision, the court of appeals reversed. The court held, as a threshold issue, that a "critical impact analysis was not required on an appeal from a discovery order"; and that the district court abused its discretion when it ordered the State to disclose the identity of the informant. *Rambahal*, 2007 WL 2770261, at \*2–3. We granted Rambahal's petition for review.

## I.

■ As a preliminary matter, we address the issue of critical impact. Minnesota Rule of Criminal Procedure 28.04 provides for pretrial appeals by the State in limited circumstances. As a "threshold matter" in any pretrial appeal by the State, "the state must 'clearly and unequivocally' show both that the trial court's order will have a 'critical impact' on the state's ability to prosecute the defendant successfully and that the order constituted error." *State v. Barrett*, 694 N.W.2d 783, 787 (Minn.2005) (quoting *State v. Scott*, 584 N.W.2d 412, 416 (Minn.1998)); *see also* Minn. R.Crim. P. 28.04, subd. 2(2). This threshold condition is intended to be a demanding standard and requires the State to show that the ruling " 'significantly reduces the likelihood of a successful prosecution.' " *State v. McLeod*, 705 N.W.2d 776, 784 (Minn.2005) (quoting *State v. Joon Kyu Kim*, 398 N.W.2d 544, 551 (Minn.1987)).

The court of appeals, relying on *State v. Renneke*, 563 N.W.2d 335, 337 (Minn.App. 1997), concluded that the State was not required to show that the district court's order would have a critical impact on the State's case because the critical impact requirement applies to pretrial suppression orders, but not to pretrial discovery orders. *Rambahal*, 2007 WL 2770261, at \*2. Furthermore, the court held that the State is not required to show the critical impact of a pretrial order in the unique circumstances presented by an order requiring disclosure of a confidential informant. *Id.* (citing *State v. Solheim*, 477 N.W.2d 785, 786–87 (Minn.App.1991) (holding that the State is not required to show that it "would dismiss the prosecution rather than disclose the informant")).

We have never adopted the court of appeals' rule exempting the State from demonstrating critical impact in discovery-related pretrial appeals, and such a rule appears to be at odds with our prior cases and the plain language of Minn. R.Crim. P. 28.04. In this case, however, the parties did not petition for review regarding critical impact, and the question of critical impact was not briefed. Because the parties have not briefed the issue of whether we should make an exception to the critical impact requirement for pretrial orders regarding disclosure of a confidential informant's identity or overrule *Solheim*, we do not address this issue further in this case.

## II.

■ We turn next to the merits of the issue raised in this appeal. Rambahal argues that the court of appeals erred in concluding that the informant's identity would not be material to the defense, and that because the district court did not abuse its discretion when it ordered the State to provide the identity of the informant, the disclosure order should be affirmed. The State argues that the informant's identity was not necessary to the defense because the informant was a mere transmitter of information and could offer no admissible testimony at Rambahal's trial. Accordingly, the State argues, the dis-

trict court abused its discretion in ordering disclosure. We review a district court order regarding disclosure of a confidential informant's identity for an abuse of discretion. *See State v. Martinez,* 270 N.W.2d 121, 122 (Minn.1978).

The dispute here arises because the common law affords the government a "privilege to withhold from disclosure the identity of persons who furnish information" to law enforcement. *Roviaro v. United States,* 353 U.S. 53, 59, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957). We have similarly recognized the State's common law privilege to withhold a confidential informant's identity because of the State's "legitimate interest in protecting the identity of persons who provide information to law enforcement." *State v. Litzau,* 650 N.W.2d 177, 184 (Minn.2002).[3]

The privilege is not unlimited, however, and it gives way when "the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause." *Roviaro,* 353 U.S. at 60–61, 77 S.Ct. 623; *see also Litzau,* 650 N.W.2d at 184. When a defendant seeks disclosure of a confidential informant's identity, "[t]he defendant has the ultimate burden of establishing the need for the disclosure." *State v. Ford,* 322 N.W.2d 611, 614 (Minn. 1982). There is "[n]o fixed rule with respect to disclosure." *State v. Wiley,* 295 Minn. 411, 422–23, 205 N.W.2d 667, 676 (1973). The analysis instead must be done on a case-by-case basis with "[t]he public's

interest in protecting the flow of information * * * balanced against the individual's right to prepare his defense." *Id.* at 423, 205 N.W.2d at 676. Our cases reflect that the emphasis in this inquiry is on fundamental fairness. *See, e.g., Hughes v. Dakota County,* 278 N.W.2d 44, 45 (Minn. 1978); *State v. Houle,* 257 N.W.2d 320, 323 (Minn.1977); *State v. Werber,* 301 Minn. 1, 7–9, 221 N.W.2d 146, 150–51 (1974); *State v. Purdy,* 278 Minn. 133, 144, 153 N.W.2d 254, 261 (1967).

We have articulated four factors for district courts to consider in determining whether to order disclosure of a confidential informant's identity: (1) "[w]hether the informant was a material witness"; (2) "[w]hether [the] informer's testimony will be material to the issue of guilt"; (3) "[w]hether testimony of officers is suspect"; and (4) "[w]hether the informant's testimony might disclose entrapment." *Syrovatka v. State,* 278 N.W.2d 558, 561–62 (Minn.1979) (citing 2 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Evidence* § 510(06)).[4] These four factors, however, are not exclusive. *See State v. Medal–Mendoza,* 718 N.W.2d 910, 919 (Minn.2006) (stating that "[s]pecific factors a district court *should* consider * * * include" the *Syrovatka* factors (emphasis added)). The four factors, instead, are to be used to inform a district court's analysis, which remains a balancing test between the defendant's right to prepare a defense and the public's interest in effective law enforcement. The central focus of this inquiry is "whether disclosure is nec-

---

**3.** There is a statutory privilege providing that "[a] public officer shall not be allowed to disclose communications made to the officer in official confidence when the public interest would suffer by the disclosure." Minn.Stat. § 595.02, subd. 1(e) (2006). The parties do not contend that this privilege is implicated in this case.

**4.** The U.S. Supreme Court has held that the inquiry depends on "the particular circumstances of each case" and has identified the following nonexclusive factors: "the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors." *Roviaro,* 353 U.S. at 62, 77 S.Ct. 623.

essary to a fair determination of the defendant's guilt." *Ford*, 322 N.W.2d at 614.

### A. Rambahal's Interest

■ In applying the balancing test, a district court must first consider the defendant's interest in obtaining the identity of the confidential informant. The *Syrovatka* factors inform a district court's analysis of a defendant's interest in disclosure. The parties agree that only the first two *Syrovatka* factors are relevant here.

The first *Syrovatka* factor acknowledges a defendant's interest in obtaining disclosure in the event that the informant is a material witness. *Syrovatka*, 278 N.W.2d at 561. Our cases distinguish among informants who are participants in criminal activity, eyewitnesses to that activity, and those simply reporting information to police. *See Ford*, 322 N.W.2d at 614; *Purdy*, 278 Minn. at 145, 153 N.W.2d at 262. For example, courts have ordered disclosure in cases where the informant is an active participant in criminal activity. *E.g., Roviaro*, 353 U.S. at 64, 77 S.Ct. 623. But "[w]here the informant is merely a transmitter of information * * * disclosure is generally not required." *Litzau*, 650 N.W.2d at 184 (citing *Houle*, 257 N.W.2d at 323).

It is undisputed in this case that the informant was not an active participant in or an eyewitness to the offense of Rambahal possessing a pistol in violation of Minn. Stat. § 624.713. The informant, instead, is most accurately characterized as a transmitter of information. Although our cases ascribe little, if any, weight to a defendant's interest in disclosure in cases where an informant is a mere transmitter, the materiality of the informant as a witness is not conclusive in the overall analysis. *E.g., Purdy*, 278 Minn. at 145, 153 N.W.2d at 262 (denying disclosure not only on the fact that the informant was a mere trans-

mitter of information, but also on the fact that the informant was "not a competent witness to the crime itself" and that "the name of the informant [was] not essential to the defense"). In other words, the fact that the informant is merely a transmitter of information will not be dispositive in all cases. Even in such a circumstance, fundamental fairness requires that the court consider whether the identity of the informant might be helpful to the defense, which leads in this case to consideration of the second *Syrovatka* factor.

■ This factor recognizes a defendant's interest in disclosure where "the informer's testimony will be material to the issue of guilt." *Syrovatka*, 278 N.W.2d at 562. The materiality of an informant's "possible testimony must be determined by reference to the offense charged * * * and the evidence relating to that count." *Roviaro*, 353 U.S. at 62, 77 S.Ct. 623. Where "there is little likelihood that an informer's testimony will be helpful to defendant in overcoming an element of the crime charged, the disclosure is not required." *Syrovatka*, 278 N.W.2d at 562.

■ The State argues that the second factor relates only to "testimony" from the informant. In this case, according to the State, the informant has no admissible testimony to offer because the information he has consists solely of hearsay accounts about the ownership of the pistol. But it is not always possible to determine in a pretrial setting what information will be admissible during a future trial. This factor therefore should not be read as limited only to those situations where the defendant can prove at the pretrial stage that the informant will offer evidence admissible at trial. *Cf.* Minn. R. Civ. P. 26.02(a) (noting that a party may discover "[r]elevant information" even though it is not admissible at trial as long as the information "appears reasonably calculated to lead

to the discovery of admissible evidence."). Even if it cannot be determined pretrial whether the informant himself could offer *admissible* evidence, the court should still proceed to examine the nature of the information the informant possesses in order to determine whether disclosure of the informant's identity is warranted.

■ The information Rambahal focuses on consists of two of the informant's statements: (1) that the pistol was owned by Holley and he was known to carry it in his car, and (2) that the informant's cousin had observed Holley hold the pistol and say that he should take his pistol and "go get" a person who had made him mad. Regarding this information, the court of appeals held that "the state must prove only that Rambahal possessed the pistol, either actually or constructively," and not that he owned the pistol. *Rambahal*, 2007 WL 2770261, at *3. The court therefore concluded that "whether Rambahal owned the pistol is not material to whether he possessed" it. *Id.* Because the second factor was not met, the court of appeals held that the district court erred in ordering disclosure. We conclude that the court of appeals construed the second factor too narrowly.

■ The overarching concern in applying the *Syrovatka* factors must be whether disclosing the informant's identity would be helpful to the defense in overcoming an element of the charge. *Litzau*, 650 N.W.2d at 184. The information the informant possesses does not have to be dispositive, by itself, on an element of the charge, as the court of appeals seems to have concluded. Rather, the information simply needs to be *helpful* to the defense in overcoming a charge. *Id.*

In examining the potential for helpfulness, we turn to the facts in the record. The record reflects that the officer encountered two individuals on the Dakota County road on January 1, 2007, but she did not see either individual in possession of the pistol. According to the complaint, the pistol was found on top of the freshly fallen snow, next to where Rambahal was standing. But the complaint also alleges that the officer encountered Holley and Rambahal as they were walking together. The informant's statements may be material to whether Rambahal was in possession of the pistol because the statements pertain to the other individual present at the scene when the officer found the pistol. Although ownership does not determine possession and cannot by itself overcome an element of the charge, the fact that the other person with Rambahal may have owned the pistol could be "*helpful* to defendant in overcoming an element of the crime charged." *Syrovatka*, 278 N.W.2d at 562 (emphasis added). For example, evidence from the informant might be used to aid in establishing reasonable doubt by supporting a defense theory that Holley, the person who owned the pistol and who was with Rambahal when the pistol was found, was in possession of it on the night in question. In addition, the complaint reflects that Holley told police that Rambahal carried the pistol for protection. Evidence from the informant about Holley's ownership might be admissible to impeach Holley's version of events, and thus it would be helpful to the defense.

In summary, we conclude that the relevant *Syrovatka* factors, primarily the second factor, indicate that the information the informant relayed may be helpful to Rambahal's defense. We turn next to consideration of the balance between Rambahal's interest and the public interest served by the privilege that protects a confidential informant's identity.

### B. Balance Between Rambahal's Interest and The Public Interest

The United States Supreme Court has highlighted the importance of the govern-

ment's privilege to protect the confidentiality of its informants as "further[ing] and protect[ing] the public interest in effective law enforcement." *Roviaro*, 353 U.S. at 59, 77 S.Ct. 623. The public interest is served because the privilege encourages performance of the "obligation of citizens to communicate their knowledge of the commission of crimes to law enforcement officials." *Id.* We have said that the privilege serves the important purpose of "add[ing] to police knowledge" because law enforcement "cannot personally know all that goes on in the criminal community." *Purdy*, 278 Minn. at 147, 153 N.W.2d at 262.

The district court did not analyze the public interest in its order and memorandum. The court simply concluded that because the informant's identity was "necessary for [Rambahal] to overcome an element of the crime charged and therefore to prepare a defense," his need for the identity "necessarily outweighs any hindrance disclos[ure] may have on effective law enforcement." We agree with the district court that if a defendant shows that disclosure is *necessary* for him to overcome an element of a charged crime, disclosure would be warranted. But Rambahal has not made such a showing.

■ As demonstrated above, Rambahal has shown that the information the informant has may be *helpful* to his defense. But Rambahal has not shown that the disclosure of the informant's identity is *necessary* for him to have a fair trial. For example, the record does not reflect how much of the informant's information comes from Rambahal himself, when the informant learned his information, when or under what circumstances the informant's cousin saw Holley with the pistol, and when or under what circumstances the cousin heard Holley say that he owned the pistol. Because this information is not in

the record, we conclude that the district court erred in finding that disclosure of the informant's identity was *necessary* for Rambahal to overcome an element of the offense.

■ A defendant does not have to show, however, that the disclosure is necessary for him to overcome an element of the charge in order to overcome the privilege. Disclosure may also be warranted if the informant's identity is sufficiently helpful to the defense. *See Litzau*, 650 N.W.2d at 184. But we cannot determine the level of helpfulness in this case because of the deficiencies in the record discussed above regarding the timeliness of the information in relation to the events at issue in this case. In addition, the record does not reflect that the district court gave any consideration to the safety concerns raised by the informant in the police reports. Such considerations are encompassed within the proper analysis of the relevant public interest, and without this information the public's interest cannot be properly weighed against the potential helpfulness to the defense. In the end, the district court's decision should articulate if the informant's information is sufficiently helpful to the preparation of the defense that the public interest must give way to ensure that the defendant receives a fair trial.

Even though the record as it stands is not sufficient to sustain the district court's conclusion that the privilege should give way, we have recognized that if a defendant "is able to establish a basis for inquiry by the [district] court, then the court should hold an in camera hearing to consider affidavits or to interview the informant in person" in order to determine whether to order disclosure. *Ford*, 322 N.W.2d at 614; *see also State v. Moore*, 438 N.W.2d 101, 106 (Minn.1989) (noting that there is a "lesser burden of establishing a basis for inquiry by the court in an in

camera hearing" than that required to support a disclosure order). We hold that Rambahal has made the requisite showing in this case based on the potential helpfulness of the informant's information to meet this "lesser burden." Accordingly, we remand this matter to the district court for an in camera hearing and further proceedings consistent with this opinion.

Reversed and remanded.

MAGNUSON, C.J., not having been a member of this court at the time of the argument and submission, took no part in the consideration or decision of this case.

Dissenting, PAGE, J.

PAGE, Justice (dissenting).

I respectfully dissent. In appealing a pretrial order, the State must show clearly and unequivocally that the order will have a critical impact upon the prosecution. *State v. McLeod*, 705 N.W.2d 776, 784 (Minn.2005). Critical impact is a threshold issue, and " '[i]n the absence of critical impact we will not review a pretrial order.' " *Id.* (quoting *In re L.E.P.*, 594 N.W.2d 163, 168 (Minn.1999)); *see also State v. Scott*, 584 N.W.2d 412, 416 (Minn. 1998) (explaining that the critical impact of the pretrial order must be first determined before deciding whether the order was error); *State v. Joon Kyu Kim*, 398 N.W.2d 544, 550 (Minn.1987) (explaining that critical impact had been a threshold requirement to review before the establishment of the court of appeals).

Historically, appeals by the government "in criminal cases are something unusual, exceptional, not favored." *Arizona v. Manypenny*, 451 U.S. 232, 245, 101 S.Ct. 1657, 68 L.Ed.2d 58 (1981) (citation and quotation marks omitted). The common law rule is that the government has no authority to appeal in a criminal case absent express legislative authorization. *Id.*

"Both prudential and constitutional interests contributed to this tradition. The need to restrict appeals by the prosecutor reflected a prudential concern that individuals should be free from the harassment and vexation of unbounded litigation by the sovereign." *Id.* at 246, 101 S.Ct. 1657.

"In Minnesota, the legislature first departed from this longstanding rule in 1967 when it enacted Minn.Stat. § 632.11 (1967) authorizing state appeal of certain pretrial orders." *Kim*, 398 N.W.2d at 549. The critical-impact rule "originated in [Minn. Stat. § 632.12 (1967) (requiring state to file critical impact statement with notice of appeal)] and was retained with some modifications by this court after adoption of the Rules of Criminal Procedure." *State v. Barrett*, 694 N.W.2d 783, 787 n. 3 (Minn. 2005). "There are good reasons for strictly construing the rule granting the prosecution the right to appeal a pretrial order. The appeal occurs while the defendant is awaiting trial, presumed innocent, and possibly confined. The defendant's right to a speedy trial is also implicated by the prosecution taking a pretrial appeal." *Id.* at 787.

The criminal rules require that the prosecutor's oral notice of intent to appeal a pretrial order include a statement for the record as to how the pretrial order will have a critical impact on the prosecution. Minn. R.Crim. P. 28.04, subd. 2(1). The rules also require that the statement of the case filed with the notice of appeal include a summary statement as to how the pretrial order will have a critical impact on the prosecution. Minn. R.Crim. P. 28.04, subd. 2(2). In other words, a prosecution appeal is authorized if the pretrial order will have a critical impact upon the prosecution. As a corollary, authority for a prosecution appeal of a disclosure order is lacking unless the State makes the requi-

site threshold showing of harm, which was not done in Rambahal's case.

Most jurisdictions allow the prosecution to appeal orders suppressing evidence, often by means of statutes that "speak generally of orders 'suppressing or excluding' evidence, and have been held applicable to a broad range of pretrial orders limiting the government's proof at trial." 7 Wayne R. LaFave, Jerold H. Israel, Nancy J. King & Orin S. Kerr, *Criminal Procedure*, § 27.3(c) at 39–40 (3d ed. 2007). Several jurisdictions limit these appeals to cases in which the suppressed evidence will have a critical or substantial impact on the outcome of the government's case. *Id.* at 42. Hawaii has specifically authorized the immediate appeal of an order denying a prosecution request for a protective order allowing nondisclosure of a witness for personal safety reasons. Haw.Rev.Stat. § 641–13(8) (Supp.2007). But "[m]any jurisdictions allowing prosecution appeals from pretrial interlocutory orders do not extend that authority beyond orders suppressing evidence." LaFave, *supra*, at 42–43.

We have read our rules as encompassing prosecution appeals of orders suppressing or excluding evidence. *E.g., McLeod,* 705 N.W.2d at 787 (holding that exclusion of *Spreigl* evidence would have a critical impact on pending trial); *Scott,* 584 N.W.2d at 420 (holding that suppression of confession would significantly reduce the likelihood of a successful prosecution). Our rules limit these appeals to cases in which the suppression or exclusion orders will have a critical impact on the prosecution. Unlike Hawaii, there is no express authorization in our rules for immediate appeal of a disclosure order in the absence of critical impact. We do have "inherent authority to [accept] an appeal in the interests of justice even when the filing or service requirements set forth in a rule or statute

have not been met." *Barrett,* 694 N.W.2d at 788 n. 4 (citation and quotation marks omitted). Whether this pretrial appeal does or does not merit departure from the threshold requirement to review in the interests of justice, I still do not believe we can reach the disclosure issue without first determining the threshold issue. Therefore, at a minimum, I would have the parties brief the threshold issue.