*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0654**

State of Minnesota,
Respondent,

vs.

Demetrious Limel Parker,
Appellant.

**Filed February 16, 2016
Affirmed
Stauber, Judge**

Hennepin County District Court
File No. 27-CR-14-25125

Michael O. Freeman, Hennepin County Attorney, Linda M. Freyer, Assistant County Attorney, Minneapolis, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Steven P. Russett, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Stauber, Presiding Judge; Reilly, Judge; and Klaphake, Judge.*

_____

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

**STAUBER**, Judge

Appellant challenges his conviction of possession of a firearm by an ineligible person, arguing that the prosecutor committed reversible error by eliciting testimony about the substance of a confidential reliable informant's (CRI) tip and that the district court abused its discretion by not ordering the disclosure of the CRI's identity or examining the CRI in camera. Because the prosecutorial misconduct did not prejudice appellant, and because appellant did not establish a basis for disclosure of the CRI's identity or an in camera inquiry of the CRI, we affirm.

## FACTS

In August 2014, law enforcement obtained a search warrant for a Minneapolis house based on information from a CRI that a person known as "Meechi" possessed a .45 caliber handgun at the residence. The CRI positively identified appellant Demetrious Limel Parker as "Meechi." Parker has a second-degree burglary conviction that prohibits him from possessing firearms.

During the execution of the search warrant, law enforcement discovered a Taurus .45 caliber pistol with a magazine containing eight rounds under a mattress in an upstairs bedroom. Detective Andrew Suerth recorded an interview with Parker at the house shortly after the search warrant was executed. In the interview, Parker said that he had been staying at the residence for a couple nights and admitted that he handled the handgun and was storing it for a friend; he also said that it did not belong to the owner of the residence. He stated the gun was a .45 caliber, and he believed it was loaded.

2

Prior to trial, Parker moved the district court to compel disclosure of the CRI's identity or alternatively to conduct an in camera hearing to determine whether the CRI's identity should be revealed. The district court denied Parker's motion. On the morning of trial, the prosecutor raised the issue of how much information from the CRI's tip would be admissible, stating "it's my understanding [the] defense is not objecting to the information that the officer had a [CRI] and that's how he had the defendant's name and address. . ." Defense counsel responded that he had "no objection to the officer indicating that a warrant was obtained based on information from an informant," and only objected to the jury knowing Parker was wanted on a felony warrant for a probation violation.

At trial, Suerth testified that a CRI told him sometime in early August a person known as "Meechi" possessed a firearm and provided information regarding "Meechi's" location, later identifying Parker as "Meechi." Suerth stated that "[w]ithin 72 hours of applying for the warrant, the [CRI] had seen [Parker] with a handgun inside of [the residence searched]." After this testimony, the jury was played a recording and provided a transcript of Suerth's initial interview with Parker.

Parker testified in his defense. At trial, he denied ever seeing, handling, or moving the handgun. He stated that he "was just making up a story" during the initial interview to protect the owner of the house and her son, claiming that his first instinct was to take the blame and that it was lucky guess the handgun was a loaded .45.

During closing arguments, the prosecutor stated that "the information also included [Parker] having a gun in early August" near the residence. The prosecutor continued, saying:

> Well, just keeping in mind that the CRI said the defendant had the gun in [the residence], that the defendant later admitted to having the gun. The CRI's info, the information given, Meechi living in this address has a gun. All those things turned out to be true. And it wasn't just a coincidence that he gave this address and gave this name and pointed officers in that direction and this defendant, first night he's ever stayed at this house, happened to be sleeping on a gun.

The jury found Parker guilty. This appeal follows.

**D E C I S I O N**

**I.      Testimony about the CRI's statements**

Parker first argues that the prosecutor committed misconduct by eliciting testimony regarding what the CRI told Suerth. Because Parker did not object at trial, we review the allegation of prosecutorial misconduct under a modified plain-error standard. *State v. Ramey*, 721 N.W.2d 294, 302 (Minn. 2006). Under this standard, the appellant must first show that there was error and that the error was plain. *State v. Martin*, 773 N.W.2d 89, 104 (Minn. 2009). If the appellant makes such a showing, the burden shifts to the state to show that the appellant was not prejudiced by the error. *Id.* If the state cannot show that the plain error did not affect the appellant's substantial rights, we then assess "whether the error should be addressed to ensure fairness and the integrity of the judicial proceedings." *Ramey*, 721 N.W.2d at 302. The primary concern in addressing

4

prosecutorial misconduct is whether the alleged misconduct deprived the defendant of his right to a fair trial. *State v. Jones*, 753 N.W.2d 677, 686 (Minn. 2008).

"An error is 'plain' if it is clear or obvious." *Id.* A prosecutor's conduct constitutes plain error when it "contravenes case law, a rule, or a standard of conduct." *Id.* It is plain error for a prosecutor to intentionally elicit inadmissible testimony. *State v. Ray*, 659 N.W.2d 736, 744 (Minn. 2003). Therefore, we must first determine whether the testimony regarding the CRI's statements was admissible. Testimony that law enforcement received a tip, for the purposes of explaining their actions, is not inadmissible hearsay. *State v. Litzau*, 650 N.W.2d 177, 182 (Minn. 2002). But a law enforcement officer "testifying in a criminal case may not, under the guise of explaining how the investigation focused on defendant, relate hearsay statements of others." *Id.* (quotation omitted). Therefore, Suerth's statements regarding the substance of the CRI's statements constitute inadmissible hearsay, and the prosecutor's elicitation of such statements was plain error.

Because there was plain error, the burden shifts to the state to show that the error did not prejudice Parker. *Martin*, 773 N.W.2d at 104. We consider three factors in determining prejudice: (1) the strength of the evidence against the defendant; (2) the pervasiveness of the misconduct; and (3) whether the defendant had the opportunity to rebut the inadmissible testimony. *Jones*, 753 N.W.2d at 692-93.

First, the evidence against Parker is strong. Parker suggests that the jury simply had to decide whether Parker was truthful in his initial statement to Suerth or if he was truthful at trial when he claimed he accepted responsibility for the handgun because he

5

did not want the owner of the house to be "in trouble." But even without the CRI's statements or Parker's initial admission, there is evidence Parker possessed the handgun: it was found under the mattress in the room where Parker had been staying and where he was sleeping when the warrant was executed.

Moreover, the jury surely found Parker's trial testimony not credible. It is unlikely that a person who is ineligible to possess a firearm would "take the blame" for a handgun found in a house where he sometimes sleeps but does not reside. There is no indication that the owner of the home was ineligible to possess a firearm such that Parker needed to protect the owner. Parker's explanation that it was a "lucky guess" that he knew the model of the handgun and that it was loaded was not persuasive given the relevant circumstances.

Second, we consider the pervasiveness of the misconduct. The prosecutor stated in his opening remarks that a police officer "had information that [Parker], who you have heard is prohibited, had a firearm." During trial, the prosecutor elicited testimony from Suerth about the substance and timing of information he received from the CRI. And in closing arguments, the prosecutor provided a basis for the CRI's credibility. Because the prosecutor mentioned the substance of the tip during multiple stages of trial, the misconduct was pervasive. But the prosecutor also relied on other arguments; the substance of the tip was not the primary focus. Additionally, unlike caselaw where a conviction was reversed for misconduct regarding hearsay evidence, there was no specific pretrial ruling on the admissibility of the substance of the tip. *See, e.g., Ray*, 659 N.W.2d at 744-45 (concluding that the prosecutor committed misconduct when he

6

repeatedly tried to elicit testimony about the substance of a tip that had previously been ruled inadmissible); *Litzau*, 650 N.W.2d at 184 (concluding that the cumulative effect of multiple errors, including the prosecutor eliciting hearsay testimony about the substance of a tip and referring to the hearsay in closing arguments, warranted a new trial). Therefore, we cannot conclude that the pervasiveness of the misconduct warrants a new trial.

Third, Parker asserts he had no opportunity to rebut the misconduct. But, prior to trial, the *prosecutor* raised the issue of admissibility of information from the CRI, stating that he "wanted to be sure concerning what objections the defense may make as to how much of that information would be brought before the jury." Parker only objected to reference of his outstanding felony warrant, and did not object to "information provided by the officer executing the warrant." Parker failed to utilize this opportunity to argue that the substance of the tip was hearsay.[1]

Based on the totality of the factors, we cannot conclude that testimony about the substance of the tip had a significant effect on the verdict. Therefore, Parker's substantial

---

[1] Parker also argues that he did not have the opportunity to rebut the CRI's testimony because he could not cross-examine the CRI. This essentially implicates the Confrontation Clause of the Sixth Amendment, which "guarantees the accused the right to confront the witnesses against him." *State v. Tscheu*, 758 N.W.2d 849, 864 (Minn. 2008). Unobjected-to Confrontation Clause violations are reviewed under the plain error standard. *State v. Caulfield*, 722 N.W.2d 304, 311 (Minn. 2006). Like unobjected-to prosecutorial misconduct, an unobjected-to Confrontation Clause violation must affect "substantial rights" before relief is granted, meaning that the error must affect the outcome of the case. *Tscheu*, 758 N.W.2d at 864. Because the balance of the factors shows that the inadmissible testimony did not affect the verdict, Parker is not entitled to a new trial based on a Confrontation Clause violation.

rights were not affected and a new trial is not required. *See, e.g., State v. Prtine*, 784 N.W.2d 303, 315 (Minn. 2010) (concluding that hearsay testimony did not have a significant impact on the verdict).

## II.     Disclosure of the CRI's identity

Parker argues that the district court erred by not ordering the disclosure of the CRI's identity or, alternatively, by not conducting an in camera investigation of the CRI. It is the defendant's burden to establish the need for disclosure. *State v. Ford*, 322 N.W.2d 611, 614 (Minn. 1982). We review the district court's decision regarding disclosure of a CRI's identity for an abuse of discretion. *State v. Rambahal*, 751 N.W.2d 84, 90 (Minn. 2008). The state has the privilege to withhold the identity of a CRI because of its interest in protecting those who furnish information to the police. *Id.* But disclosure of a CRI's identity is required when it "is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause." *Id.* (quotation omitted). A request for disclosure is considered on a case-by-case analysis focused on fundamental fairness, balancing the need to protect the flow of information and the need to prepare a defense. *Id.* The district court considers four nonexclusive factors in assessing the need for disclosure: (1) whether the CRI is a material witness; (2) whether the CRI's testimony is material to the issue of guilt; (3) whether law enforcement's testimony is suspect; and (4) whether the CRI's testimony might expose entrapment. *Id.* The overarching concern in applying these factors is "whether disclosing the informant's identity would be helpful to the defense in overcoming an element of the charge." *Id.* at 92.

8

Parker asserts that the CRI is a material witness because the fact that the CRI observed Parker with the handgun is highly probative of the fact that Parker constructively possessed the handgun. The district court found that although only the CRI observed Parker actually possess the handgun, the state would rely on Parker's own admission. Parker was charged based on the handgun being under his mattress and his admissions, not solely the CRI's observations. Thus, the CRI was not a material witness. Likewise, because the handgun was found under a mattress in Parker's room and Parker admitted he was holding the handgun for a friend, the CRI's statements about seeing Parker with the handgun prior to the search warrant are confirmatory but not strictly material to the issue of guilt. As discussed above, we cannot conclude that Parker would not have been convicted without the CRI's statements. Moreover, Parker does not assert that the officer's testimony was suspect or that there was entrapment. Therefore, the factors weigh against disclosing the CRI's identity. There is no other indication that the informant's identity could help Parker overcome any element of ineligible possession of a firearm. Because the district court considered the necessary factors and the CRI's testimony was likely not material, the district court did not abuse its discretion by refusing to order the disclosure of the CRI's identity.

Parker also contends that the district court should have conducted an in camera hearing to determine whether the CRI's identity should be disclosed. The defendant bears the burden to show the need to examine a CRI in camera. *State v. Wessels*, 424 N.W.2d 572, 574 (Minn. App. 1988), *review denied* (Minn. July 6, 1988). "All that is needed to justify an in camera inquiry is a minimal showing of a basis for inquiry but

9

something more than mere speculation by the defendant that examination of the informant might be helpful." *State v. Moore*, 438 N.W.2d 101, 106 (Minn. 1989). Parker provides no reasoning as to how an in camera examination would aid his defense. Therefore, the district court did not abuse its discretion by not conducting such an inquiry.

**Affirmed.**